James Hannah (State Bar No. 237978)
Christina M. Finn (State Bar No. 247838)
Paul J. Andre (State Bar No. 196585)
HERBERT SMITH FREEHILLS
KRAMER (US) LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 751-1700
Facsimile: (650) 751-1800
james.hannah@hsfkramer.com
christina.finn@hsfkramer.com
paul.andre@hsfkramer.com

*Attorneys for Plaintiff*
Innovation Technologies Partners LP

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATION TECHNOLOGIES PARTNERS LP, | ) Case No.: |
| | ) |
| | ) **COMPLAINT FOR PATENT** |
| Plaintiff, | ) **INFRINGEMENT** |
| | ) |
| v. | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| HULU, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

COMPLAINT FOR                              CASE NO.
PATENT INFRINGEMENT

Plaintiff Innovation Technologies Partners LP ("Plaintiff" or "Innovation Technologies") files this Complaint for Patent Infringement and Demand for Jury Trial against Defendant Hulu, LLC ("Defendant" or "Hulu") and alleges as follows:

1.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 et seq.  This court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 and 1338.

## THE PARTIES

2.     Innovation Technologies Partners LP ("Innovation Technologies") is organized and existing under the laws of the state of Texas, with its primary place of business at 211 E. 7th St., Ste. 620 Austin, Texas 78701.

3.     Upon information and belief, Defendant Hulu, LLC ("Hulu") is a Delaware Limited Liability Company, which has its principal place of business at 2500 Broadway, Ste. 200, Santa Monica, California 90404.

## JURISDICTION AND VENUE

4.     This action for patent infringement arises under the laws of the United States, 35 U.S.C. § 101 *et seq*.  This Court has federal question jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 and 1338 because this is a civil action arising under the Patent Act.

5.     This Court has personal jurisdiction over Hulu because it has sufficient minimum contacts with this District such that this jurisdiction does not offend

1

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

traditional notions of fair play and substantial justice. Hulu is headquartered in this District, where it regularly and continuously conducts its business. Further, Hulu has infringed or induced infringement, and continues to do so, in this District. On information and belief, Hulu provides systems, applications, websites and/or services to residents in this District.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) and 1400(b) because Hulu is subject to personal jurisdiction in this District, and the acts complained of herein have been, and are being, committed in this District. Hulu is headquartered in this District, and it is a convenient forum for resolution of the parties' disputes with respect to the Counts alleged herein.

## FACTUAL BACKGROUND

## PLAINTIFF INNOVATION TECHNOLOGIES' ASSERTED PATENTS

7.     Plaintiff Innovation Technologies acquired the asserted patents from Intertrust Technologies Corporation ("Intertrust"). Intertrust is a software technology company that was founded in 1990 and is a leader in providing trusted computing services that unify device and data operations. Intertrust's ground-breaking digital rights management ("DRM") technology utilizes systems and policies that control the use and distribution of digital content, protecting intellectual property from unauthorized copying, sharing, and modification.

COMPLAINT FOR                                   CASE NO.
PATENT INFRINGEMENT

8.    The United States Patent and Trademark Office ("USPTO") awarded Intertrust with many patents for its innovations related to its DRM technology.

9.    On July 29, 2014, the USPTO issued U.S. Patent No. 8,793,808 (the "'808 Patent"), entitled "Dynamic Media Zones Systems and Methods."  The '808 Patent lists Gilles Boccon-Gibod as the inventor and is assigned to Innovation Technologies.  Attached hereto as Exhibit 1 is a true and correct copy of the '808 Patent.

10.    On February 25, 2014, the USPTO issued U.S. Patent No. 8,660,539 (the "'539 Patent"), entitled "Data Collection and Targeted Advertising Systems and Methods."  The '539 Patent lists Prasad M. Khambete and Sanjeev Tenneti as the inventors and is assigned to Innovation Technologies.  Attached hereto as Exhibit 2 is a true and correct copy of the '539 Patent.

11.    On January 29, 2019, the USPTO issued U.S. Patent No. 10,191,972 (the "'972 Patent"), entitled "Content Delivery Systems and Methods."  The '972 Patent lists David P. Maher, Prasad Khambete, Prasad Sanagavarapu, Sanjeev Tenneti, and Laurent Grandhomme as the inventors and is assigned to Innovation Technologies. Attached hereto as Exhibit 3 is a true and correct copy of the '972 Patent.

12.    On September 15, 2020, the USPTO issued U.S. Patent No. 10,776,831 (the "'831 Patent"), entitled "Content Delivery Systems and Methods."  The '831 Patent lists David P. Maher, Prasad Khambete, Prasad Sanagavarapu, Sanjeev

3

COMPLAINT FOR                                      CASE NO.
PATENT INFRINGEMENT

Tenneti, and Laurent Grandhomme as the inventors and is assigned to Innovation Technologies.  Attached hereto as Exhibit 4 is a true and correct copy of the '831 Patent.

13.    On March 7, 2023, the USPTO issued U.S. Patent No. 11,599,912 (the "'912 Patent"), entitled "Content Delivery Systems and Methods."  The '912 Patent lists David P. Maher, Prasad Khambete, Prasad Sanagavarapu, and Laurent Grandhomme as the inventors and is assigned to Innovation Technologies.  Attached hereto as Exhibit 5 is a true and correct copy of the '912 Patent.

14.    On October 22, 2024, the USPTO issued U.S. Patent No. 12,125,070 (the "'070 Patent"), entitled "Content Delivery Systems and Methods."  The '070 Patent lists David P. Maher, Prasad Khambete, Prasad Sanagavarapu, Sanjeev Tenneti, and Laurent Grandhomme as the inventors and is assigned to Innovation Technologies.  Attached hereto as Exhibit 6 is a true and correct copy of the '070 Patent.

15.    On May 31, 2016, the USPTO issued U.S. Patent No. 9,355,157 (the "'157 Patent"), entitled "Information Targeting Systems and Methods."  The '157 Patent lists Irfan Mohammed, Dennis Su, David Maher, Yiming Ma, Rudi Cilibrasi, and Julien Bellanger as the inventors and is assigned to Innovation Technologies. Attached hereto as Exhibit 7 is a true and correct copy of the '157 Patent.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

16.     On March 9, 2021, the USPTO issued U.S. Patent No. 10,945,003 (the "'003 Patent"), entitled "Dynamic Content Mapping Systems and Methods."  The '003 Patent lists Steven Rahman as the inventor and is assigned to Innovation Technologies.  Attached hereto as Exhibit 8 is a true and correct copy of the '003 Patent.

17.     The '808, '539, '972, '831, '912, '070, '157, and '003 Patents are collectively referred herein as the "Asserted Patents."

18.     The Asserted Patents are patent eligible, valid, and enforceable.  The Asserted Patents specifically claim inventive concepts that represent significant improvements that are designed to improve upon earlier technological solutions for streaming content, including by presenting messages to customers as they are streaming media on their electronic devices, such as warnings regarding the screened content and advertisements.

### The Inventions of the '808 Patent

19.     The claims of the '808 Patent cover a specific technological system designed to improve upon earlier technological solutions for controlling electronic content.  The claims provide a specific solution which involves creating new data, namely zone maps, which define a plurality of zones and use a license that comprises a control program to impose an obligation on access.  This is a departure from earlier approaches because the system changes the normal operation of content delivery and

5

enhances computer functionality as it enables the dynamic insertion of content using zone maps, electronic licenses, control programs, and other novel components.  As such, the claims recite a specific process to obtain a goal.

20.    The claimed inventions of the '808 Patent describe novel and unconventional methods and systems.  For example, Claim 5 of the '808 Patent is a method performed by a system comprising at least a processor that creates a zone map defining multiple zones within content that a user is streaming.  An electronic license is associated with the content and consists of at least one control program that requires certain conditions to be met, including an obligation that a message, such as an advertisement or warning associated with the content, be played before the user may view the content that they are streaming.

21.    Claim 5 of the '808 Patent details specific steps leading to the outcome of controlling electronic content through the method of packaging a first piece of electronic content on a system that comprises a processor.  The system comprising at least one processor creates a first zone map that defines a plurality of zones within the first piece of electronic content and associates an electronic license with the electronic content.  The license comprises at least one control program and defines conditions associated with access to or use of the content on a user's device.  The control program determines a first predefined condition associated with a first zone in the first zone map and, after the condition is met, imposes a first obligation on access

6

to or other use of the first zone.  Thus, the limitations of this claim do not merely

center on a desired outcome but detail specific steps leading to that outcome.

22.    The claimed methods in the '808 Patent solve the shortcomings of prior

systems that hardcoded these requirements into the system's architecture.  '808 Patent

at 1:45-51.  Hardcoding such requirements provided no visibility into whether the

requirements were honored or how many times users viewed the messages, which

may have included warning screens or advertisements.  *Id.*  The '808 Patent

ameliorates these issues by allowing the requirements to be dynamically inserted into

the content and governed in accordance with policies specified by entities (e.g., an

author or distributor of the content).  *Id.* at 51-65.  The requirements can also be

dynamically modified based on various factors, such as satisfaction of certain

conditions or the passage of time.  *Id.*

### The Inventions of the '539 Patent

23.    The claims of the '539 Patent cover a specific technological system that

is designed to improve upon earlier technological solutions for utilizing usage

statistics.  The claims provide a specific solution which involves a system collecting

usage statistics with a secret key from a user's electronic device by tracking content

usage of the user in accordance with a license associated with electronic content and,

based on these statistics and verification of the usage statistics signed with the secret

key, classifying the user into categories with varying degrees of affinity and

7

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

recommending targeted messages based at least in part on the user's classification into these categories. This is a departure from earlier approaches because the system changes the normal operation of collecting usage statistics and enhances computer functionality as it leverages a variety of components, including a secret key, license, content usage, digital rights management engine, varying types of events, and other novel components. As such, the claims further recite a specific process to obtain a goal.

24. The claimed inventions of the '539 Patent describe novel and unconventional methods and systems. For example, in Claim 1 of the '539 Patent, the server system receives usage statistics signed with a secret key from a user's electronic device. The usage statistics may include various data about the user's interactions with the messages, such as how many times a user skipped over the message and how often the message was presented in its entirety to the user, amongst other events. Based on these statistics signed with the secret key that are tracked according to a license that is configured to be enforced by a digital rights management engine, the user is classified into different interest categories with varying degrees of affinity and recommends targeted messages, such as advertisements, to the user based on the categories the user is classified as.

25. Claim 1 of the '539 Patent details specific steps leading to the outcome of the invention. The method includes a server system that collects usage statistics

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

and recommends targeted advertisements to a user of an electronic device comprises

at least one processor that is adapted and programmed to receive usage statistics

signed with a private key from a user's electronic device by tracking the user's

content usage based on a license associated with electronic content.  The license is

configured to be enforced by a digital rights management engine that runs on the

user's electronic device and comprises obligations that the electronic device must

perform when use of the electronic content that will be streamed is requested.  The

usage statistics include one or more events such as how many times advertisement is

played, play/stop events, clicking on an advertisement, skipping forward and/or

skipping back part of a content item or advertisement, voting for a content item,

responding to a survey associated with a content item or advertisement with certain

response, skipping a survey entirely, a content item was presented in its entirety, and

application and/or content forwarding behaviors.  The usage statistics received from

the user's electronic device are verified, and the user is classified into one or more

categories according to the usage statistics.  Then targeted advertisements for

products and/or services are recommended based in part on the categories that the

user is classified as.  Thus, the limitations of this claim do not merely center on a

desired outcome but detail specific steps leading to that outcome.

26.    The claimed methods in the '539 Patent solve shortcomings of prior

systems that collected usage information, such as by tracking downloads from WAP

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

portals/web servers when users visited a website or  tracking the delivery of text messages to users' phones.  '539 Patent at 1:24-47.  A drawback of tracking downloads from WAP portals/web servers is that it does not provide fine-grained information regarding how users actually consume the content.  *Id.*  Tracking delivery of text messages to users' phones can also be quite inaccurate, given that users often delete these messages as spam without ever reading them.  The '539 Patent ameliorates these issues by basing its messages, such as advertisements, on usage statistics stored on a server system that receives usage data from a user's electronic device.  *Id.* at Abstract.  The server system makes inferences about users' preferences by tracking user's content usage and behaviors; generates recommended advertisements based on this usage data; and transmits recommendations of messages, such as advertisements, to present to the user as they stream content using specific components in a novel architecture.  *Id.* at 1:24-47.

### The Inventions of the '972 Patent

27.    The claims of the '972 Patent cover a specific technological system that is designed to improve earlier technological solutions for distributing content.  The claims provide a specific solution which involves the creation of new data, namely a content license that identifies slots within electronic content, specifies types of advertisement that are not permitted, and specifies criteria for selecting advertisement by evaluating the technical capabilities of a third party device, among other features.

10

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

Further, the content electronic license is securely associated and distributed. This is a departure from earlier approaches because the system changes the normal operation of content delivery by creating new data, namely the content electronic license, and enhances computer functionality as it leverages slots, bids, and a clearinghouse for the insertion of advertisements, as well as other novel components. As such, the claims further recite a specific process to obtain a goal.

28.    The claimed inventions of the '972 Patent describe novel and unconventional methods and systems. For example, in Claim 1 of the '972 Patent, the method is performed by one or more computing devices. The method comprises a content electronic license specifying criteria for selecting messages, such as advertisements, to be inserted into content that a user is streaming. For instance, advertisements may be selected based on the technical capabilities of the user device's, including its CPU performance, network connectivity, and local storage capacity. Furthermore, the third party device selects the advertisement to insert where the selected advertisement yields the highest revenue. A clearinghouse then provides information regarding the advertisement that was inserted.

29.    The '972 Patent improves the technical field and technology by providing a technical evaluation of the capabilities of devices that correspond to advertisements and securely associating a content electronic license with an electronic content item. . Criteria considered may include the user device's CPU

11

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

performance and storage capacity, which may result in the improvement of the functioning of the user's device and streaming.  By taking these factors into consideration, the claims of the '972 Patent can solve problems with prior systems by distributing messages, such as advertisements, that are well-targeted to the user and that can optimally compensate the content provider, distributor and other stakeholders.

30.    Claim 1 of the '972 Patent details specific steps leading to the desired outcome.  The method is performed on one or more computing devices for distributing an electronic content item for consumption along with advertisements. The method comprises at least one of the computing devices creating a content electronic license that identifies slots within the electronic content item where advertisements are to be inserted.  The content electronic license also specifies types of advertisements that are not permitted to be inserted into one or more slots within the electronic content and specifies criteria for selecting advertisements to insert into the one or more slots, wherein the potential advertisements to insert are selected by evaluating the user device's technical capabilities including at least one of CPU performance, network connectivity, and local storage space.  The content electronic license is securely associated by the one or more computing devices with the electronic content item; and the electronic content item and content electronic license is distributed to the user's device.  The user's device selects an advertisement to

COMPLAINT FOR                                        CASE NO.
PATENT INFRINGEMENT

insert into the one or more slots within the electronic content item by evaluating bids made in association with each of the advertisements, wherein the selected advertisement yields the highest revenue out of the plurality of advertisements for a content provider of the electronic content. The selection of the advertisement is performed after the user's device receives instructions to render the electronic content item. Thus, the limitations of this claim do not merely center on a desired outcome but detail specific steps leading to that outcome.

### The Inventions of the '831 Patent

31.    The claims of the '831 Patent cover a specific technological system that is designed to improve upon earlier technological solutions for rendering content. The claims provide a specific solution which involves an electronic license specifying criteria for advertisements to be selected and inserted via an electronic device into streamed content. This is a departure from earlier approaches because the system changes the normal operation of content delivery and enhances computer functionality as it leverages an electronic content license that is securely associated with a content item which identifies slots and specifies criteria for selecting content to insert into the slots by evaluating bids and technical capability of a device.  As such, the claims further recite a specific process to obtain a goal.

32.    The claimed inventions of the '831 Patent describe novel and unconventional methods and systems. In Claim 1 of the '831 Patent, the method is

13

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

performed by an electronic device. The method comprises an electronic content license that specifies criteria for selecting messages, such as advertisements, to be inserted into the content the user is streaming. For example, content items, such as advertisements, are evaluated and chosen based on the technical capabilities of the user's device, including its CPU performance, network connectivity, and/or local storage capacity. The selecting of content items is also based, in part, on maximizes the objective function, such as the content item that has the highest bid price.

33.     The '831 Patent improves the technical field and technology by optimizing systems that render content. Such factors may be based on the technical capabilities of the user's device, such as its CPU performance and/or storage capacity, which may result in the improvement of the functioning of the user's device and streaming. For example, the claims of the '831 Patent describe solving problems with prior systems by distributing content items, such as advertisements, in a technologically efficient manner by determining the appropriate advertisement to insert at a given time.

34.     Claim 1 of the '831 Patent details specific steps leading to the desired. . The method is performed by a user's electronic device and comprises the electronic device receiving a content item and electronic content license that is securely associated with the content item. The electronic content license identifies one or more slots within the content item at which one or more content items, such as

COMPLAINT FOR                                                    CASE NO.
PATENT INFRINGEMENT

advertisements may be inserted and specifies the criteria for selecting the content items to insert into the slots within the content item.  The method further comprises receiving a request to render the content item on the user's electronic device and selecting, based on information from the electronic content license, at least one or more content items to insert into the slots within the content item.  The selecting comprises evaluating the content items against criteria and evaluating one or more bids made in association with the content items against at least one objective function, where the selected message maximizes the function.  The selecting is further based on at least one technical capability associated with the user's electronic device, such as its processing performance, network connectivity, and local storage space.  The content item is then rendered on the user's device, and the selected content items is inserted into the slots within the content item.  Thus, the limitations of this claim do not merely center on a desired outcome but detail specific steps leading to that outcome.

### **The Inventions of the '912 Patent**

35.     The claims of the '912 Patent claim a specific technological system that is designed to improve upon earlier technological solutions rendering content.  The claims provide a specific solution which involves an electronic content license specifying criteria for advertisements to be selected and inserted via an electronic device and network interface into streamed content using a digital rights management

15

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

engine.  This is a departure from earlier approaches because the system changes the normal operation of rendering content and enhances computer functionality as it leverages content items with a securely associated content item which identifies content insertion slots, the capability of the electronic device, a digital rights management engine, and bids made in association with content items against a objective function, amongst other novel components.   As such, the claims further recite a specific process to obtain a goal.

36.    The claimed inventions of the '912 Patent describe novel and unconventional methods and systems.  In Claim 1 of the '912 Patent, the method is performed by an electronic device.  The method comprises the user's device receiving at its network interface an electronic content license specifying criteria for selecting content items, such as advertisements, to be inserted into the content the user is streaming.  For example, potential content items may be evaluated and chosen based on the technical capabilities of the user's device, including its CPU performance, network connectivity, and/or local storage capacity.  The digital rights management engine that is executing on  the electronic device selects content items to insert into content insertion slots by further evaluating the bids and selecting the one that maximizes the objective function.

37.    The '912 Patent improves the technical field and technology by optimizing the rendering of content.  Such factors may be based on the technical

16

capabilities of the user's device, such as its CPU performance and/or storage capacity, which may result in the improvement of the functioning of the electronic device and streaming.  For example, the claims of the '912 Patent describe solving problems with prior systems by distributing messages, such as advertisements, in a technologically efficient manner by determining the appropriate message to insert at a given time based on specific criteria detailed in the claims.

38.    Claim 1 of the '912 Patent details specific steps leading to the outcome of rendering content.  The method is performed by an electronic device, with the method comprising the network interface of the electronic device receiving a content item and electronic content license that is securely associated with the content item.  The electronic content license identifies one more insertion slots within the content item and specifies one or more criteria for selecting content items, such as advertisements, to insert into the slots.  The network interface of the electronic device receives one or more potential content items to insert, with the content items being selected based in part on at least one capability of the electronic device.  The method further comprises receiving a request to render the first content item using the electronic device and selecting, using a digital rights management engine that is executing on the electronic device based on information included the electronic content license a message to insert into the content insertion slots within the content item.  The selection of the message comprises evaluating the messages against one or

17

COMPLAINT FOR                                        CASE NO.
PATENT INFRINGEMENT

more criteria and evaluating bids associated with the messages against at least one objective function, wherein the selected message maximizes that function.  The rendering application on the user's electronic device renders the content item, including the selected messages within the content insertion slots.  Thus, the limitations of this claim do not merely center on a desired outcome but detail specific steps leading to that outcome.

### The Inventions of the '070 Patent

39.    The claims of the '070 Patent cover a specific technological system that is designed to improve upon earlier technological solutions for managing content.  The claims provide a specific solution which involves receiving an electronic license by a trusted proxy services providing a digital peer for an electronic device and selecting a content item using a digital rights management engine.  This is a departure from earlier approaches because the system changes the normal operation of managing content and enhances computer functionality as it leverages a trusted proxy service, digital rights management engine executed by the trusted proxy service, and bids made in association with content items, amongst other novel components.  As such, the claims recite a specific process to obtain a goal.

40.    The claimed inventions of the '070 Patent describe novel and unconventional methods and systems.  In Claim 1 of the '070 Patent, the method comprises a trusted proxy service receiving an electronic content license that

18

COMPLAINT FOR                                   CASE NO.
PATENT INFRINGEMENT

specifies criteria for selecting content items, such as advertisements, to be inserted into the content the user is streaming.  For example, potential messages, such as advertisements, may be evaluated and chosen based on at least one technical capability of the user's device, such as its CPU performance, network connectivity, and/or local storage capacity.  The digital rights management engine that is executed by the trusted proxy service selects the message to insert by further evaluating the bids associated with the content and selecting the one that maximizes the objective function, such as the message that has the highest bid price.

41.    The '070 Patent improves the technical field and technology by optimizing the management of content.  Such factors may be based on the technical capabilities of the user's device, such as its CPU performance and/or storage capacity, which may result in the improvement of the functioning of the user's device and streaming.  For example, the claims of the '070 Patent describe solving problems with prior systems by distributing messages, such as advertisements, in a technologically efficient manner by determining the appropriate message to insert at a given time using a trusted proxy service in conjunction with a digital rights management engine.

42.    Claim 1 of the '070 Patent details specific steps leading to the desired outcome.  The method comprises a trusted proxy service that provides a digital peer for the electronic device receiving an electronic content license that is securely

19

COMPLAINT FOR                                              CASE NO.
PATENT INFRINGEMENT

associated with an electronic content item, where the electronic content license identifies one or more insertion slots within the content item and specifies criteria for selecting content items, such as advertisements, to insert into content insertion slots. The trusted proxy service receives one or more messages, with the messages being selected in part on the capability of the electronic device.  The digital rights management engine executed by the trusted proxy service selects, based on the electronic content license, the message to insert into the insertion slots within the content item.  The selecting comprises evaluating the content items against criteria and evaluating the bids associated with the content items against an objective function, wherein the selected content items maximizes that function.  The trusted proxy service then enables the selected content items to be rendered within the content insertion slots by a rendering application that is executing on the electronic device.  Thus, the limitations of this claim do not merely center on a desired outcome but detail specific steps leading to that outcome.

### The Inventions of the '157 Patent

43.     The claims of the '157 Patent cover a specific technological system that is designed to improve upon earlier technological solutions for trusted systems.  The claims provide a specific solution which involves an interface of a trusted information system receiving a user's personal information and generating new data, namely a personal ontology graph related to the user, which comprises a level of interest.  The

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

system further includes accessing an interest taxonomy database and identifying a second level of interest associated with the first level of interest and including the second level of interest in the personal ontology graph.  This is a departure from earlier approaches because the system changes the normal operation of trusted systems and enhances computer functionality as it generates an ontology graph and selects content items based on the first and second level of interest included in the personal ontology graph..  As such, the claims recite a specific process to obtain a goal.

44.    The claimed inventions of the '157 Patent describe novel and unconventional methods and systems.  For example, in Claim 1 of the '157 Patent, an interface of a trusted information system receives personal information regarding a user and generates a personal ontology graph based on this information.  The personal ontology graph may encompass not only information that the user directly inputs but can also make inferences regarding the user's interests.  Thus, the '157 Patent enables a user to be presented with content or messages, such as advertisements, that align with the interests identified in the personal ontology graph that is associated with the user.

45.    The '157 Patent allows a user's personal information to be securely extracted without requiring them to reveal their personal information to untrusted and/or unknown sources.  '157 Patent at 3:51-4:5.  The '157 Patent allows

21

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

information to be stored in a data structure, such as a personal ontology graph,

information volunteered by a user, and/or a user's activities in connection with an

electronic device.  *Id.*  The '157 Patent thus improves the technical field and

technology by facilitating the delivery of information targeted to a user based on their

interests reflected in the associated data structure.  *Id.* at 2:1-16.

46.    Claim 1 of the '157 Patent details specific steps leading to the desired.

The method is performed by a trusted system that comprises a processor and non-

transitory computer-readable storage medium that stores instructions that, when

executed by the processor, cause the trusted system to perform the method.  The

method comprises an interface of the trusted system receiving from a device, a user's

personal information, where the personal information is provided by multiple trusted

components, including applications executing on the device.  A personal ontology

graph is generated based on the user's personal information, with the personal

ontology graph comprising first level interest information relating to the user.  The

first level interest information is derived from inferences based on the personal

information.  The personal ontology graph additionally comprises accessing an

interest taxonomy database, identifying second level interests included in the interest

taxonomy database associated with the first level interest information, and including

second level interests in the personal ontology graph.  The interface receives content

items or messages, such as advertisement and selects, at least based on the first level

22

COMPLAINT FOR                                      CASE NO.
PATENT INFRINGEMENT

interests and second level interests from the personal ontology graph, a content item or message and transmits the selected content or message to the user device for it to be rendered. Thus, the limitations of this claim do not merely center on a desired outcome but detail specific steps leading to that outcome.

## The Inventions of the '003 Patent

47.     The claims of the '003 Patent cover a specific technological system that is designed to improve upon earlier technological solutions for rendering content. The claims provide a specific solution which involves identifying a segment that comprises a user demographic or user interest, determining a content map with content break locations, generating a content stream, and generating a first test content map and second test content map, amongst other novel features. This is a departure from earlier approaches because the system changes the normal operation of rendering content and enhances computer functionality as it leverages content maps with specific content break locations, test content maps, test responses, other novel components. As such, the claims further recite a specific process to obtain a goal.

48.     The claimed inventions of the '003 Patent describe novel and unconventional methods and systems. For example, in Claim 1 of the '003 Patent, a content map is generated that is associated with a segment that is based on a user's interests or demographics. The content map comprises specified content break

COMPLAINT FOR                                         CASE NO.
PATENT INFRINGEMENT

locations for rendering content within other content.  A content stream is then generated and transmitted to a user device.  Conventional systems do not employ the claimed content mapping,.  '003 Patent at 1:39-54.  The '003 Patent ameliorates problems in the art by mapping out the optimal duration and timing for such messages to be presented to users, which may make them more amenable to viewing the messages.  *Id.*

49.    The '003 Patent improves the technical field and technology by basing the mapping of the messages on user's interests, including inserting messages of different lengths and at specific times to optimize the user's reaction and experience with the message.  *Id.*

50.    Claim 1 of the '003 Patent details specific steps leading to the desired outcome.  The method is performed by a content service system that comprises a processor and non-transitory computer-readable medium storing instructions that, when executed by the processor, cause the processor to perform the method.  The method comprises identifying a segment that is associated with a user, where the segment comprises a demographic or user interest and is determined based in part on user information received from the user's device.  The method further comprises identifying a content map that is associated with the identified segment, where the content map comprises content break locations.  A content item is mapped in accordance with the content map associated with the identified segment, and a

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

content stream is generated. The content stream is then transmitted to the user's device, and a first test content map and second test content map are generated. Information corresponding to the first test content map from a first group of test user devices and the second test content map from a second group of test user devices that are associated with the segment associated with the user of the device are received. The first test response information and second test response information are compared based on at least one objective content mapping criteria, and a content map is generated in past on the comparison. Thus, the limitations of this claim do not merely center on a desired outcome but detail specific steps leading to that outcome.

**Prosecution History of the Asserted Patents**

51.    Claims of the '808, '972, '831, and '912 Patent issued following amendments during prosecution to overcome Section 101 rejections.

52.    During prosecution for the application that issued as the '808 Patent, the claims were amended to add the requirement to each of the independent claims that the method was being performed on a system comprising at least one processor. These amendments were made to overcome the prior office actions rejecting the pending claims, including on the basis that they were ineligible under Section 101. The examiner allowed the '808 Patent to issue following these amendments which focused on the method being performed on a system that included a processor.

25

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

53.     The prosecution of the '972 Patent spans more than eight years, culminating in a notice of allowance after an amendment to the claims pursuant to a Section 101 final rejection.  In the final rejection, the Examiner stated that incorporating the following into the claim limitations "may qualify as 'significantly more' when recited in [the] claim[s]" to overcome the Section 101 rejection:

> The additional elements are related to the provision of real-time or close to real-time feedback on advertising campaigns (i.e., paragraphs [62] and [65]) which improves the technical field and technology of real-time responses to advertisement performance, and similarly, paragraphs [143] to [147] disclose the optimization of advertisement distribution taking into account CPU performance and storage location which may result in an improvement to the functioning of the computer as well as improvements to another technology or technical field.

54.     The independent claims were amended to add language from paragraphs [143] to [147] wherein the selection of advertisements was based on "evaluating technical capabilities of the third-party device, the technical capabilities of the third-party device including at least one of CPU performance, network connectivity, and local storage space."  The examiner agreed to allow the '972 Patent to issue following the amendments.

55.     During prosecution for the application that issued as the '831 Patent, the claims were amended pursuant to a Section 101 rejection.  In the April 30, 2020 Notice of Allowance, the Examiner's Statement of Reasons for Allowance stated,

> The Applicants were previously notified that dependent claims 22-25 were statutorily eligible (see Non-Final Office Action dated 1

26

November 2019). As a result of incorporating the subject matter of dependent claims 22-25 into independent claim 12, the Examiner finds the instant invention to be statutorily eligible under 35 USC 101, and the rejection is accordingly withdrawn.

. . . .

The instant claims are found to be directed to the practical application of licensing the execution of a content item and the insertion of additional content as monitored by an electronic license. This is directed to a practical application because the method of selecting and inserting the content item is performed in accordance with improving processing performance, network connectivity, and local storage space.

56.     During prosecution for the application that issued as the '912 Patent, the claims were amended to add the requirement "receiving, at the network interface of the electronic device, one or more second content items, the one or more second content items being selected for transmission to the electronic device based, at least in part, on at least one capability of the electronic device." These amendments were made to overcome the prior office actions rejecting the pending claims, including on the basis that they were ineligible under Section 101. In the November 23, 2022 Notice of Allowance, the Examiner's Statement of Reasons for Allowance included that the claims disclosed "the dividing of computation tasks between server side and local computing systems as a way to optimize the use of network, local storage, and other constraints." The examiner allowed the '912 Patent to issue following these amendments.

27

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

57.     Thus, the claims of the '808, '972, '831, and '912 Patent have been specifically amended to address Section 101 eligibility and allowed by the U.S. Patent and Trademark Office based on such amendments.

58.     In the '070 Patent's prosecution history, the Examiner initially rejected certain claims of the application under Section 101, but then withdrew the rejections based on his evaluation under "the 2019 PEG Revised Step 2A Prongs One and Two" where he determined the invention described "a judicial exception and further directed to a practical application."  The examiner noted that the claims were eligible because they disclosed "the dividing of computation tasks between server side and local computing systems as a way to optimize the use of network, local storage, and other constraints."  Based on these findings, the examiner allowed the '070 Patent to issue.

59.     During prosecution for the application that issued as the '157 Patent, the examiner initially rejected select claims under Section 101.  However, the Examiner withdrew his rejection, stating in the February 3, 2016 Notice of Allowance that the claims were "directed to a process (a method)" and fell under a statutory eligible category because the claim included "a processor" and "a non-transitory computer-readable storage medium."  The examiner also stated that the claims were patent eligible because they included "'additional elements/steps' that [we]re sufficient to

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

amount to significantly more than the judicial exception" which requires "transforming or reducing . . . a particular article to a different state or thing."

## HULU'S INFRINGEMENT OF
## INNOVATION TECHNOLOGIES' PATENTS

60.     Defendant Hulu provides a widely used U.S. media streaming service with over 50 million paid memberships.  Hulu provides messages to its customers as they are streaming media on their electronic devices, such as warnings regarding the screened content and advertisements.

61.     Hulu makes, uses, sells, offers for sale, and/or imports into the United States in this District, systems, products, and services.  Hulu provides its streaming platform and service to users that render the content on their electronic devices, including but not limited to computers, laptops, televisions, and mobile cellular and Wi-Fi devices.  Hulu's streaming platform and service will be collectively referred to as the "Accused Systems and Services," which include Hulu's website, application, video player and related software, as well as Hulu's servers and software which are used to implement and operate the platform and service, which are described in further detail below.

62.     Hulu uses HTTP Live Streaming ("HLS") media formats such as Request for Comments 8216 and HTTPs Live Streaming 2nd Edition, which will be collectively referred to as "HTTP Live Streaming media formats," in developing and selling its streaming services, which allows its media to be continuously live

29

streamed over the internet.  The HTTP Live Streaming media formats detail the data format of files and actions that the servers sending the data and customers receiving the streamed content must take.

**Requirements and Design Goals**

**Functionality**

Our Live TV offering needs to deliver video to a variety of devices, which means the service needs to produce both Dynamic Adaptive Streaming over HTTP (MPEG-DASH) and Apple's HTTP Live Streaming (HLS) media formats. At a high level, our system must ingest contribution streams from vendors, remux and repackage the video segments, and publish them to the CDN origin. In addition to the video workflow, the service needs to be capable of processing ad and program markers from the ingested stream to present live assets as programs (not simply as channels) with accurate start and end times as well as identify sections of the program that are ads.

Ex. 9 at 2 (https://medium.com/hulu-tech-blog/the-challenges-of-live-linear-video-ingest-part-one-live-versus-on-demand-system-requirements-89238f3af4f6).

63.    Through its implementation of the HTTP Live Streaming media formats, Hulu creates zone maps for the streamed media.

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

**2. Overview**

A multimedia presentation is specified by a Uniform Resource Identifier (URI) [RFC3986] to a Playlist.

A Playlist is either a Media Playlist or a Multivariant Playlist. Both are UTF-8 text files containing URIs and descriptive tags.

A Media Playlist contains a list of Media Segments, which, when played sequentially, will play the multimedia presentation.

Here is an example of a Media Playlist:

Pantos                    Expires 21 February 2026              [Page 5]

Internet-Draft          HTTP Live Streaming 2nd Edition        August 2025

```
#EXTM3U
#EXT-X-TARGETDURATION:10

#EXTINF:9.009,
http://media.example.com/first.ts
#EXTINF:9.009,
http://media.example.com/second.ts
#EXTINF:3.003,
http://media.example.com/third.ts
```

Ex. 10 at 3 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).



https://www.youtube.com/watch?v=LFHEko3vC98

31

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

64.    When streaming media content to users via the HTTP Live Streaming media formats, Hulu incorporates technology that can control the content.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

65.    Hulu's technology can control the content in various ways, such as by (a) encrypting the media (e.g., advertisements, warnings) to ensure it is protected from unauthorized access; and (b) controlling how the content is accessed or used, such as by preventing users from skipping through messages, such as advertisements. In implementing the HTTP Live Streaming media formats, Hulu encrypts its content using AES-128 (Advanced Encryption Standard).  AES-128 allows video content to be protected during its transit to customer devices and is widely used.

```
HTTP requests often include session state ("cookies"), which may
contain private user data.  Implementations MUST follow cookie
restriction and expiry rules specified by "HTTP State Management
Mechanism" [RFC6265] to protect themselves from attack.  See also the
Security Considerations section of that document, and "Use of HTTP
State Management" [RFC2964].

Encryption keys are specified by URI.  The delivery of these keys
SHOULD be secured by a mechanism such as HTTP Over TLS [RFC9110]
(formerly SSL) in conjunction with a secure realm or a session token.
```

Ex. 10 at 49 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

**9.3.** **Playlist with Encrypted Media Segments**

```
#EXTM3U
#EXT-X-VERSION:3
#EXT-X-MEDIA-SEQUENCE:7794
#EXT-X-TARGETDURATION:15

#EXT-X-KEY:METHOD=AES-128,URI="https://priv.example.com/key.php?r=52"

#EXTINF:2.833,
http://media.example.com/fileSequence52-A.ts
#EXTINF:15.0,
http://media.example.com/fileSequence52-B.ts
#EXTINF:13.333,
http://media.example.com/fileSequence52-C.ts
```

*Id.* at 45 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18 ).

```
The value of the X-RESTRICT attribute is an enumerated-string-list
of Navigation Restriction Identifiers.  The defined Navigation
Restriction Identifiers are: SKIP and JUMP.  These restrictions
are enforced at the player UI level.  This attribute is OPTIONAL.

If the list contains SKIP then while the interstitial is being
played, the client MUST NOT allow the user to seek forward from
the current playhead position or set the rate to greater than the
regular playback rate until playback reaches the end of the
interstitial.
```

*Id.* at 57 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

66.    Hulu has a system of servers that collects customers' usage statistics and activity and recommends targeted advertisements to users who are streaming the content.

*Your Browsers and Devices.* We may work with service providers who use information collected from or about you to help us identify the browsers and devices you use for various purposes, including for targeted advertising, analytics, attribution, and measurement purposes. For example, these service providers (along with Hulu) may use your activity on one browser or device to serve you with more tailored advertising on another browser or device. In connection with your use of browsers and devices, please note that certain opt out choices you have as described in Section 7 ("Your Choices, Including Opt-Out Options") apply only to the specific browser or device from which you opt out.

*Advertisers and Advertising-Related Service Providers.* We may share the information collected from or about you in encrypted, aggregated, or de-identified forms with advertisers and service providers that perform advertising-related services for us and our business partners in order to tailor advertisements, measure and improve advertising effectiveness, and enable other enhancements. This information includes your use of the Hulu Services, websites you visited, advertisements you viewed, and your other activities online.

*Audience Measurement Providers.* Our business partners, such as content programmers, as well as our advertisers, seek to measure the performance of their creative material across many platforms, including the Hulu Services. Accordingly, Hulu may permit the use of third-party measurement software that enables third parties (such as Nielsen) to include your viewing on the Hulu Services in calculating measurement statistics such as TV Ratings. To learn more about your choices with respect to Nielsen measurement software, please see the information we have provided in Section 7 ("Your Choices, Including Opt-Out Options").

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

Ex. 12 at 3-4 (https://press.hulu.com/privacy-policy/).

### 3. Use of Information We Collect

Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:

- providing the Hulu Services;
- contacting you, including for promotional purposes;
- customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
- identifying Content you share;
- customizing recommendations;
- conducting research;
- compiling aggregate data for internal and external business purposes;
- preventing potentially illegal or harmful activities, including fraud;
- protecting your and our rights;
- other uses in accordance with our Terms of Use; and
- any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.

*Id*. at 2-3 (https://press.hulu.com/privacy-policy/).

67.    When users sign up for Hulu's services, Hulu stores this data in its "Data Center" and builds a profile for the user.  Hulu may also collect information when users utilize its services, which may include the user's location and activity on its sites or third-party sites.  Hulu can then generate "Related Tables" that are based on "Collaborative Filtering" to "predict user preferences by analyzing their behaviors" and interests.

1. **User profile builder:** When a user first comes into the recommendation system, we will first build a profile for them. The profile includes the user's historical behaviors and topics, and these are generated from their old behaviors. Users can have many different types of behaviors. For example, they can watch videos, add shows to favorites, search for videos and vote on videos and shows. All these behaviors are all considered by our system and, after extracting all these behaviors, we use a topic model which is trained offline to generate users' preference on topics.

Ex. 13 at 2 (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT



Ex. 14 at 3 (https://www.lifewire.com/add-profile-to-hulu-5212283).

### 2. Information We Collect

Hulu may collect the following information from or about you:

Information You Provide To Us. We collect information you provide to us. For instance, when you register to use the Hulu Services, we may collect your name, email address, birth date, gender, credit card information, billing address, ZIP code, and other information. In addition, Hulu may collect information you provide to us when you respond to surveys, set your preferences, contact Hulu through customer service or by other means, or participate in promotions that Hulu may offer from time to time. Hulu also allows multiple profiles to be set up under one account, so we may collect information you provide to us if you create a profile.

Usage and Log Data. We collect information when you use the Hulu Services or view Hulu advertising outside of the Hulu Services. Examples of this information may include your IP address, device, browser and software characteristics (such as type and operating system), location (which may include precise location data), activity on the Hulu Services including information about the videos you view on Hulu (e.g., show titles and episode names), page views, ad data, referral URLs, network state, device identifiers or other unique identifiers such as advertising identifiers (e.g., "ad-ID" or "IDFA") and identifiers associated with browser cookies (see our description of "Cookies and Local Storage" below), and carrier information.

Ex. 12 at 1 (https://press.hulu.com/privacy-policy/).

Ex. 13 at 3 (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

> **Architecture**
>
> There are many different types of recommendation algorithms, and perhaps the most famous algorithm is collaborative filtering (CF). CF relies on user behavior data, and its main idea is to predict user preferences by analyzing their behaviors. There are two types of CF methods: user-based CF (UserCF) and item-based CF (ItemCF). UserCF assumes that a user will prefer items which are liked by other users who have similar preferences to that user. ItemCF assumes that a user will prefer items similar to the assets he or she preferred previously. ItemCF is widely used by many others (for example, Amazon and Netflix), as it has two main

Ex. 15 at 1 (https://web.archive.org/web/20151006161004/http://tech.hulu.com/blog/2011/09/19/recommendation-system/).

68.     Based on this data and users' interests, Hulu presents users with messages, such as warnings regarding the streamed content and/or advertisements as they are streaming content.

69.     Hulu dynamically incorporates advertisements into a user's streamed content by using "Dynamic Ad Insertion."  Dynamic advertising can be inserted into "Ad Breaks" and presented to users during those slotted time intervals.

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 1-2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

> **DAI (Dynamic Ad Insertion)**: Within the context of Hulu's services, the acronym DAI refers to Dynamic Ad Insertion and only occurs within Clean assets. In this experience, Hulu stores ad segment information as singular timecodes. Playback of content is paused at these times and a call to an ad server is made to present the user with advertising. When the advertising has completed, playback of the content resumes from the same timecode.

Ex. 17 at 9 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

36

COMPLAINT FOR                          CASE NO.
PATENT INFRINGEMENT

**6.3.2.3 Ad Breaks**

As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.

```
<App_Data App="MOD" Name="Ad_Breaks"
Value="00:06:18;05,00:13:26;21,00:23:41;18"/>
```

As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

*Id*. at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

70.    Hulu has been and is now infringing, and will continue to infringe, the Asserted Patents in this District and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale its Accused Systems and Services.

71.    In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, or both, Hulu also indirectly infringes the Asserted Patents pursuant to 35 U.S.C. § 271(b) and (c), by instructing, directing, and/or requiring others, including their customers, purchasers, shoppers, users, and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, or both, of the Asserted Patents.  Hulu contributorily infringes the Asserted Patents by making and supplying the Hulu application and supporting servers and software that are components in an infringing system with components from manufacturers, customers,

37

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

purchasers, shoppers, users, and developers that together meet all claim elements in the Asserted Patents, literally and/or under the doctrine of equivalents.

72.    Hulu was aware of the Asserted Patents no later than November 7, 2025, when Innovation Technologies sent Hulu a letter notifying them of their infringement of the Asserted Patents, and has done nothing to curtail its infringement.

73.    Despite Hulu's knowledge of the Asserted Patents and Innovation Technologies' patented technology, Hulu made the deliberate decision to make, use, sell, and offer for sale systems and services that it knew infringed Innovation Technologies' Asserted Patents.

74.    Hulu has undertaken no efforts to avoid infringement of the Asserted Patents, despite Hulu's knowledge and understanding that its systems and services infringe these patents.

75.    Hulu knew or was willfully blind to Innovation Technologies' patented technology at least by November 7, 2025.  Despite this knowledge and/or willful blindness, Hulu has acted with disregard for Innovation Technologies' patent rights with an objectively high likelihood of infringement.

76.    Hulu  knowing of Innovation Technologies' Asserted Patents, encouraged, by instructing, directing, and/or requiring others, including their customers, purchasers, shoppers, users, and developers, to perform all or some of the

38

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

steps of the method claims, either literally or under the doctrine of equivalents, or both, of the Asserted Patents.

77.    As such, Hulu specifically intended to induce, including their customers, purchasers, shoppers, users, and developers, to practice the claims of the Asserted Patents.

## COUNT I
### (Direct Infringement of the '808 Patent)

78.    Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

79.    In violation of 35 U.S.C. § 271(a), Hulu directly infringed and continues to infringe at least Claim 5 of the '808 Patent by making, using, importing, selling, and offering for sale in the United States the Accused Systems and Services.

80.    Hulu's acts of making, using, importing, selling, and/or offering for sale the Accused Systems and Services have been without permission, consent, authorization, or license of Innovation Technologies.

81.    Hulu's infringement includes the manufacture, use, sale, importation, and/or offer for sale of the Accused Systems and Services, which infringe on the '808 Patent because they satisfy each element of the claims of the '808 Patent, either literally, or under the doctrine of equivalents, or both.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

82.     By way of example of Hulu's infringement of the '808 Patent, the Accused Systems and Services meet all limitations of at least Claim 5 of the '808 Patent, which recites:

> A method of packaging a first piece of electronic content, the method being performed on a system comprising at least one processor, the method comprising:
>
> creating, using the processor, a first zone map defining a plurality of zones in the first piece of electronic content; and
>
> associating an electronic license with the first piece of electronic content, the license comprising at least one control program, the license defining one or more conditions associated with access to or other use of at least part of the first piece of electronic content on a device, the control program being operable, when executed on the device, to determine that a first predefined condition associated with a first zone defined in the first zone map is met, and, after the first predefined condition is met, to impose a first obligation on access to or other use of the first zone;
>
> in which the first obligation includes a requirement that the first zone be played prior to playing at least a first part of the first piece of electronic content.

83.     The Accused Systems and Services perform a method of packaging a first piece of electronic content, with the method being performed on a system that comprises a processor.  For example, Hulu implements HTTP Live Streaming ("HLS") for its services.  Hulu recognizes that its streaming system must "ingest contribution streams from vendors . . . and repackage the video segments . . . ." Ex. 9 at 2.  Thus, Hulu uses HLS, which allows media to be continuously live-streamed over the internet.

40

**Requirements and Design Goals**

**Functionality**

Our Live TV offering needs to deliver video to a variety of devices, which means the service needs to produce both Dynamic Adaptive Streaming over HTTP (MPEG-DASH) and Apple's HTTP Live Streaming (HLS) media formats. At a high level, our system must ingest contribution streams from vendors, remux and repackage the video segments, and publish them to the CDN origin. In addition to the video workflow, the service needs to be capable of processing ad and program markers from the ingested stream to present live assets as programs (not simply as channels) with accurate start and end times as well as identify sections of the program that are ads.

*Id*. (https://medium.com/hulu-tech-blog/the-challenges-of-live-linear-video-ingest-part-one-live-versus-on-demand-system-requirements-89238f3af4f6).

1.  **Introduction to HTTP Live Streaming**

    HTTP Live Streaming provides a reliable, cost-effective means of delivering continuous and long-form video over the Internet. It allows a receiver to adapt the bit rate of the media to the current network conditions in order to maintain uninterrupted playback at the best possible quality. It supports interstitial content boundaries. It provides a flexible framework for media encryption. It can efficiently offer multiple renditions of the same content, such as audio translations. It offers compatibility with large-scale HTTP caching infrastructure to support delivery to large audiences. It supports low-latency playback at scale.

Ex. 10 at 3 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

84.    Hulu uses HTTP Live Streaming media formats to live stream its content.  These HTTP Live Streaming media formats detail the data format of files and the actions that must be taken by servers sending the data and the receivers (customers) of the live stream.

41

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

> **Requirements and Design Goals**
>
> **Functionality**
>
> Our Live TV offering needs to deliver video to a variety of devices, which means the service needs to produce both Dynamic Adaptive Streaming over HTTP (MPEG-DASH) and Apple's HTTP Live Streaming (HLS) media formats. At a high level, our system must ingest contribution streams from vendors, remux and repackage the video segments, and publish them to the CDN origin. In addition to the video workflow, the service needs to be capable of processing ad and program markers from the ingested stream to present live assets as programs (not simply as channels) with accurate start and end times as well as identify sections of the program that are ads.

Ex. 9 at 2 (https://medium.com/hulu-tech-blog/the-challenges-of-live-linear-video-ingest-part-one-live-versus-on-demand-system-requirements-89238f3af4f6).

> Independent Submission                                    R. Pantos, Ed.
> Request for Comments: 8216                                  Apple, Inc.
> Category: Informational                                         W. May
> ISSN: 2070-1721                                      MLB Advanced Media
>                                                            August 2017
>
>
>                           HTTP Live Streaming
>
> Abstract
>
>    This document describes a protocol for transferring unbounded streams
>    of multimedia data.  It specifies the data format of the files and
>    the actions to be taken by the server (sender) and the clients
>    (receivers) of the streams.  It describes version 7 of this protocol.

Ex. 19 at 1 (https://datatracker.ietf.org/doc/html/rfc8216).

> The purpose of this document is to facilitate interoperability
> between HTTP Live Streaming implementations by describing the media
> transmission protocol.  Using this protocol, a client can receive a
> continuous stream of media from a server for concurrent presentation.

Ex. 10 at 3 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

85.    Hulu uses a server, distribution component, and the client's software. The server takes the streams of media and digitally encodes them.  They are then packaged for distribution to customers streaming digital content, as shown in the figure below.

COMPLAINT FOR                                              CASE NO.
PATENT INFRINGEMENT



Ex. 20 at 1 (https://developer.apple.com/documentation/http-live-streaming).

**Prepare media with the server component**

The server component is responsible for taking input streams of media and encoding them digitally. It encapsulates them in a format suitable for delivery and prepares the encapsulated media for distribution.

For live events, the server requires a media encoder, which can be off-the-shelf hardware, and a way to break the encoded media into segments and save them as files, which can either be software such as the media stream segmenter provided by Apple or part of an integrated third-party solution.

**Deliver files with the distribution component**

The distribution system is a web server or a web-caching system that delivers the media files and index files to the client over HTTP. No custom server modules are required to deliver the content, and typically very little configuration is needed on the web server. To actually deploy HTTP Live Streaming, you need to create either an HTML page for browsers or a client app to act as a receiver. You also need the use of a web server and a way to encode live streams as fragmented MPEG-4 media files containing HEVC or H.264 video, and AAC or AC-3 audio.

*Id*. at 2 (https://developer.apple.com/documentation/http-live-streaming).

86.    Hulu creates a zone map with a plurality of zones in the first piece of electronic content using a processor.  According to the HTTP Live Streaming media formats, HLS allows content producers to insert messages, such as advertisements or warnings, into streamed content.  To accomplish this, content producers create a zone

43

1   map that defines a plurality of zones (i.e., advertising segments) in the electronic

2   media/presentation.  As an example, services using HLS create playlists, which

3   comprise media segments (i.e., zones) of set durations.

4

5   ## Overview

6   HTTP Live Streaming sends audio and video as a series of small files, typically of about 6 seconds duration, called
    *media segment files*. An index file, or playlist, provides an ordered list of the URLs of the media segment files. Index files
7   for HTTP Live Streaming are saved as M3U8 playlists, an extension of the M3U format used for MP3 playlists. The URL
    of the index file is accessed by clients, which then request the indexed files in sequence.

8

9   Ex. 21 at 1 (https://developer.apple.com/documentation/http-live-streaming/example-playlists-for-http-live-streaming).

10

11  **3.  Media Segments**

12     A Media Playlist contains a series of Media Segments that make up the
       overall presentation.  A Media Segment is specified by a URI and
13     optionally a byte range.

14  Ex. 10 at 4 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

15     A Media Playlist contains a list of Media Segments, which, when
       played sequentially, will play the multimedia presentation.

16     Here is an example of a Media Playlist:

17

18

19                    antos              Expires 21 February 2026              [Page 5]

20     nternet-Draft        HTTP Live Streaming 2nd Edition        August 2025

21

22     #EXTM3U
       #EXT-X-TARGETDURATION:10

       #EXTINF:9.009,
23     http://media.example.com/first.ts
       #EXTINF:9.009,
       http://media.example.com/second.ts
24     #EXTINF:3.003,
       http://media.example.com/third.ts

25  *Id*. at 3 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

26

27

28

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

https://www.youtube.com/watch?v=LFHEko3vC98

**3. Media Segments**

   A Media Playlist contains a series of Media Segments that make up the overall presentation.  A Media Segment is specified by a URI and optionally a byte range.

Ex. 10 at 4 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

   87.    When streaming its media content to users, Hulu uses electronic licenses that govern and/or control that content.  Hulu incorporates a control program that enforces the terms of the license.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

88.    These electronic licenses comprise control programs that can perform functions including (a) encrypting the media (e.g., advertisements, warnings) to ensure it is protected from unauthorized access; and (b) controlling how the content is accessed or used.  As an example, the HTTP Live Streaming media formats discuss protecting streamed media (e.g., advertisements, warnings) from unwanted attacks through the use of various encryption mechanisms.



**Serve key files securely over HTTPS**

Protect your media by encrypting it. The file segmenter and stream segmenter tools both have encryption options, and you can configure them to change the encryption key periodically. Who you share the keys with is up to you.

Keys files require an initialization vector to decode encrypted media. The initialization vectors can be changed periodically, just as the keys can. The current recommendation for encrypting media while minimizing overhead is to change the key every 3 to 4 hours and change the initialization vector after every 50 Mb of data.

Even with restricted access to keys, it's possible for an eavesdropper to obtain copies of the key files if they're sent over HTTP. One solution to this problem is to send the keys securely over HTTPS. Before attempting to serve key files over HTTPS, test serving the keys from an internal web server over HTTP. This allows you to debug your setup before adding HTTPS to the mix. Once you have a known working system, you can make the switch to HTTPS.

Ex. 22 at 2 (https://developer.apple.com/documentation/http-live-streaming/deploying-a-basic-http-live-streaming-hls-stream).



```
HTTP requests often include session state ("cookies"), which may
contain private user data.  Implementations MUST follow cookie
restriction and expiry rules specified by "HTTP State Management
Mechanism" [RFC6265] to protect themselves from attack.  See also the
Security Considerations section of that document, and "Use of HTTP
State Management" [RFC2964].

Encryption keys are specified by URI.  The delivery of these keys
SHOULD be secured by a mechanism such as HTTP Over TLS [RFC9110]
(formerly SSL) in conjunction with a secure realm or a session token.
```

Ex. 10 at 49 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

46

```
6.2.3.  Encrypting Media Segments

Media Segments MAY be encrypted.  Every encrypted Media Segment MUST
have an EXT-X-KEY tag (Section 4.4.4.4) applied to it with a URI that
the client can use to obtain a Key file (Section 5) containing the
decryption key.

A Media Segment can only be encrypted with one encryption METHOD,
using one encryption key and IV.  However, a server MAY offer
multiple ways to retrieve that key by providing multiple EXT-X-KEY
tags, each with a different KEYFORMAT attribute value.
```

Ex. 10 at 34 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

89.    Hulu encrypts its content using AES-128 (Advanced Encryption Standard).  AES-128 allows video content to be protected during its transit to user devices and is widely used.

```
8.3.  Playlist with Encrypted Media Segments

#EXTM3U
#EXT-X-VERSION:3
#EXT-X-MEDIA-SEQUENCE:7794
#EXT-X-TARGETDURATION:15

#EXT-X-KEY:METHOD=AES-128,URI="https://priv.example.com/key.php?r=52"

#EXTINF:2.833,
http://media.example.com/fileSequence52-A.ts
#EXTINF:15.0,
http://media.example.com/fileSequence52-B.ts
#EXTINF:13.333,
http://media.example.com/fileSequence52-C.ts

#EXT-X-KEY:METHOD=AES-128,URI="https://priv.example.com/key.php?r=53"

#EXTINF:15.0,
http://media.example.com/fileSequence53-A.ts
```

Ex. 19 at 28 (https://datatracker.ietf.org/doc/html/rfc8216).

90.    Hulu associates the media content with a playlist file that contains references to (a) encrypted segments of the content, (b) the key file's location to decrypt and access the content, and (c) instructions for playback, including rules for interstitial advertisements.

91.    As an example for encryption, the EXT-X-KEY tag lays out how the user should use the key to decrypt the encrypted media segments.

47

COMPLAINT FOR                                           CASE NO.
PATENT INFRINGEMENT

HTTP Live Streaming / Using content protection systems with HLS

Article

# Using content protection systems with HLS

Adding encryption keys to media playlists

## Overview

HTTP Live Streaming (HLS) supports content protection systems through the presence of EXT-X-KEY tags in playlists. HLS allows multiple EXT-X-KEY tags with different KEYFORMAT attributes to apply to the same segments provided that each of the tags ultimately produces the same decryption key. This is necessary because you can only encrypt a media segment with one encryption method, using one encryption key, with a single IV (initialization vector).

While a playlist may contain EXT-X-KEY tags for more than one protection system, a player typically supports only one protection system. This means that every encrypted segment must have EXT-X-KEY tags for the same set of protection systems. The player refuses to play the playlist if it doesn't handle any of the protection systems. If the player can handle more than one protection system, it chooses one. The playlist has no mechanism to convey a preference for a protection system.

This document provides general guidance on using such EXT-X-KEY tags.

For convenience sake, this document refers to some details of the Google Widevine and Microsoft PlayReady protection systems. The documentation for those systems should be used to ensure accurate implementation.

Ex. 23 at 1 (https://developer.apple.com/documentation/http-live-streaming/using-content-protection-systems-with-hls).

```
4.4.4.4.  EXT-X-KEY

    Media Segments MAY be encrypted.  The EXT-X-KEY tag specifies how to
    decrypt them.  It applies to every Media Segment and to every Media
    Initialization Section declared by an EXT-X-MAP tag that appears
    between it and the next EXT-X-KEY tag in the Playlist file with the
    same KEYFORMAT attribute or a METHOD of NONE (or the end of the
    Playlist file).  Any Media Segment or Media Initialization
    Section that precedes the first EXT-X-KEY tag is unencrypted.  Two or
    more EXT-X-KEY tags with different KEYFORMAT attributes MAY apply to
    the same Media Segment if they ultimately produce the same decryption
    key.  The format is:

    #EXT-X-KEY:<attribute-list>
```

Ex. 10 at 14 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

```
5.  Key Files

5.1.  Structure of Key Files

    An EXT-X-KEY tag with a URI attribute identifies a Key file.  A Key
    file contains a cipher key that can decrypt Media Segments in the
    Playlist.

    [AES_128] encryption uses 16-octet keys.  If the KEYFORMAT of an EXT-
    X-KEY tag is "identity", the Key file is a single packed array of 16
    octets in binary format.
```

*Id.* at 31 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

COMPLAINT FOR                                              CASE NO.
PATENT INFRINGEMENT

```
If the encryption METHOD is AES-128 and the Media Segment is part of
an I-frame Playlist (Section 4.3.3.6) and it has an EXT-X-BYTERANGE
tag applied to it, special care needs to be taken in loading and
decrypting the segment, because the resource identified by the URI is
encrypted in 16-byte blocks from the start of the resource.

The decrypted I-frame can be recovered by first widening its byte
range, as specified by the EXT-X-BYTERANGE tag, so that it starts and
ends on 16-byte boundaries from the start of the resource.

Next, the byte range is widened further to include a 16-byte block at
the beginning of the range.  This 16-byte block allows the correct IV
for the following block to be calculated.

The widened byte range can then be loaded and decrypted with AES-128
CBC using an arbitrary IV.  The number of bytes added to the
beginning and the end of the original byte range are discarded from
the decrypted bytes; what remains is the decrypted I-frame.

If the encryption METHOD is SAMPLE-AES, AES-128 decryption SHALL be
applied to encrypted media samples within the Media Segment.
```

*Id.* at 40 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

```
8.3.  Playlist with Encrypted Media Segments

   #EXTM3U
   #EXT-X-VERSION:3
   #EXT-X-MEDIA-SEQUENCE:7794
   #EXT-X-TARGETDURATION:15

   #EXT-X-KEY:METHOD=AES-128,URI="https://priv.example.com/key.php?r=52"

   #EXTINF:2.833,
   http://media.example.com/fileSequence52-A.ts
   #EXTINF:15.0,
   http://media.example.com/fileSequence52-B.ts
   #EXTINF:13.333,
   http://media.example.com/fileSequence52-C.ts

   #EXT-X-KEY:METHOD=AES-128,URI="https://priv.example.com/key.php?r=53"

   #EXTINF:15.0,
   http://media.example.com/fileSequence53-A.ts
```

Ex. 19 at 28 (https://datatracker.ietf.org/doc/html/rfc8216).

92.    Hulu allows content producers to insert interstitial content. Interstitial content, such as advertisements and warnings, act as "sticky glue," meaning that they cannot be skipped over, and users are "stuck" watching them in their entirety.

49

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

**1.  Introduction to HTTP Live Streaming**

HTTP Live Streaming provides a reliable, cost-effective means of
delivering continuous and long-form video over the Internet.  It
allows a receiver to adapt the bit rate of the media to the current
network conditions in order to maintain uninterrupted playback at the
best possible quality.  It supports interstitial content boundaries.
It provides a flexible framework for media encryption.  It can
efficiently offer multiple renditions of the same content, such as

Ex. 10 at 3 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

**D.6.  Example: Interstitial EXT-X-DATERANGE**

In this playlist an EXT-X-DATERANGE tag schedules a 15-second ad to
play four seconds into a six-second primary asset.  The client will
play the interstitial and then resume playback of the primary asset
where it left off.  Seeking and scanning forward will be disabled
during interstitial playback.  The EXT-X-DATERANGE tag includes a
vendor-defined beacon attribute that can be processed by the client.

*Id.* at 59 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

93.    As an example, Hulu's server may insert EXT-X-DATERANGE tags
that obligate the customer to play the advertisements at certain times during their
streaming service.  For example, if the customer is streaming a movie, the EXT-X-
DATERANGE may require the customer to watch an advertisement for a set amount
of time in order for the customer to continue watching the movie.  In the example
provided by the HTTP Live Streaming media formats, the customer will be required
to watch a 15 second advertisement and will not be able to skip or jump through it,
per the X-RESTRICT tag.

COMPLAINT FOR                                             CASE NO.
PATENT INFRINGEMENT

**D.6**.  **Example: Interstitial EXT-X-DATERANGE**

In this playlist an EXT-X-DATERANGE tag schedules a 15-second ad to play four seconds into a six-second primary asset.  The client will play the interstitial and then resume playback of the primary asset where it left off.  Seeking and scanning forward will be disabled during interstitial playback.  The EXT-X-DATERANGE tag includes a vendor-defined beacon attribute that can be processed by the client.

Pantos                          Expires 21 February 2026                   [Page 109]

Internet-Draft              HTTP Live Streaming 2nd Edition                 August 2025

```
#EXTM3U
#EXT-X-TARGETDURATION:6
#EXT-X-PROGRAM-DATE-TIME:2020-01-02T21:55:40.000Z
#EXTINF:6,
main1.0.ts
#EXT-X-ENDLIST
#EXT-X-DATERANGE:ID="ad1",CLASS="com.apple.hls.interstitial",
     START-DATE="2020-01-02T21:55:44.000Z",DURATION=15.0,
     X-ASSET-URI="http://example.com/ad1.m3u8",X-RESUME-OFFSET=0,
     X-RESTRICT="SKIP,JUMP",X-COM-EXAMPLE-BEACON=123
```

*Id*. at 59-60 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

The value of the X-RESTRICT attribute is an enumerated-string-list of Navigation Restriction Identifiers.  The defined Navigation Restriction Identifiers are: SKIP and JUMP.  These restrictions are enforced at the player UI level.  This attribute is OPTIONAL.

If the list contains SKIP then while the interstitial is played, the client MUST NOT allow the user to seek forward from the current playhead position or set the rate to greater than the regular playback rate until playback reaches the end of the interstitial.

If the list contains JUMP then the client MUST NOT allow the user to seek from a position in the primary asset earlier than the START-DATE attribute to a position after it without first playing the interstitial asset, even if the interstitial at START-DATE was played through earlier.  If the user attempts to seek across more than one interstitial, the client SHOULD choose at least one interstitial to play before allowing the seek to complete.

*Id*. at 57 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

94.    Hulu further states that users who do not have a specific subscription cannot fast-forward through advertisements.

51

COMPLAINT FOR                                         CASE NO.
PATENT INFRINGEMENT

**Can I fast forward through the ads on Hulu?**

You can't fast forward through ad breaks on Hulu, but if you subscribe to Hulu (No Ads) most shows* and movies in the Hulu streaming library will be ad-free.

If you're a Live TV subscriber, you can fast forward through the ads in Cloud DVR recordings. Just keep in mind that you won't be able to fast-forward through ads in any other content.

*Due to streaming rights, a few shows will play with an ad before and after each episode.

Ex. 24 at 2 (https://help.hulu.com/article/hulu-ads-on-hulu#personalized).

95.     As discussed above, the interstitial programming requires customers to watch advertisements at certain times during their streaming experiences, which is the first obligation, in order to continue watching their show.  RCF 8216 provides EXT-X-DATERANGE, where content producers can require customers to watch a warning or advertisement before watching their content.  X-RESTRICT can be programmed to disable skipping or jumping through the advertisement or warning as part of the first obligation.

COMPLAINT FOR                                            CASE NO.
PATENT INFRINGEMENT

**D.6.** Example: Interstitial EXT-X-DATERANGE

In this playlist an EXT-X-DATERANGE tag schedules a 15-second ad to play four seconds into a six-second primary asset. The client will play the interstitial and then resume playback of the primary asset where it left off. Seeking and scanning forward will be disabled during interstitial playback. The EXT-X-DATERANGE tag includes a vendor-defined beacon attribute that can be processed by the client.

Pantos                          Expires 21 February 2026                    [Page 109]

Internet-Draft           HTTP Live Streaming 2nd Edition            August 2025

```
#EXTM3U
#EXT-X-TARGETDURATION:6
#EXT-X-PROGRAM-DATE-TIME:2020-01-02T21:55:40.000Z
#EXTINF:6,
main1.0.ts
#EXT-X-ENDLIST
#EXT-X-DATERANGE:ID="ad1",CLASS="com.apple.hls.interstitial",
    START-DATE="2020-01-02T21:55:44.000Z",DURATION=15.0,
    X-ASSET-URI="http://example.com/ad1.m3u8",X-RESUME-OFFSET=0,
    X-RESTRICT="SKIP,JUMP",X-COM-EXAMPLE-BEACON=123
```

Ex. 10 at 59-60 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

96.     Thus, the Accused Systems and Services satisfy all elements of at least Claim 5 of the '808 Patent.

97.     Hulu's direct infringement of the '808 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

98.     Hulu's infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

53

COMPLAINT FOR                                      CASE NO.
PATENT INFRINGEMENT

99.    Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283 and 285 for Hulu's direct infringement of the '808 Patent.

## COUNT II
**(Indirect Infringement of the '808 Patent)**

100.    Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

101.    As set forth above, Hulu has had knowledge of Innovation Technologies' patents and of its infringement of the '808 Patent prior to the filing of this Complaint.

102.    As set forth above, the Accused Systems and Services directly infringe the '808 Patent.  Additionally, Hulu has actively, knowingly, and intentionally induced and continues to induce infringement of one or more claims of the '808 Patent pursuant to 35 U.S.C. § 271(b); and has contributorily infringed and continues to contributorily infringe one or more claims of the '808 Patent under 35 U.S.C. § 271(c).

103.    Hulu indirectly infringes the '808 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including customers, purchasers, shoppers, users, and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '808 Patent, where all the steps of the method claims are performed by either Hulu, its customers,

54

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

purchasers, shoppers, users, and developers, or some combination thereof. For example, Hulu requires customers to follow its digital rights management mechanisms and stream content according to the terms of applicable licenses. Hulu also requires content producers and developers, including advertisers and other third parties, to adhere to the guidelines set forth in applicable licenses and contracts.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

104.    Thus, Hulu knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, shoppers, users, and developers, to infringe by practicing, either themselves or in conjunction with one another or Hulu, one or more method claims of the '808 Patent, including at least Claim 5.

105.    Hulu knowingly and actively aided and abetted the direct infringement of the '808 Patent by instructing and encouraging its customers, purchasers, shoppers, users, and developers to use its Accused Systems and Services, as shown above.

COMPLAINT FOR                          CASE NO.
PATENT INFRINGEMENT

Such instructions and encouragement include, but are not limited to, advising third parties to use the Accused Systems and Services in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Systems and Services in an infringing manner.  Further examples of this instruction and encouragement include, for example, trainings by Hulu either in-person or by instructional videos and material, for its content developers and customers as to how to utilize the Hulu application, and how to stream and create content by utilizing Hulu's applications, technology, or website.

106.   Hulu updates and maintains help and customer service sections on its website which cover in-depth aspects of operating the Accused Systems and Services in an infringing manner and instruct consumers and content developers on how to configure and use the Accused Systems and Services in an infringing manner.  *See*, *e.g.*, Ex. 24 (https://help.hulu.com/article/hulu-ads-on-hulu); Ex. 17 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

107.   Hulu has knowingly and actively contributed to the direct infringement of the '808 Patent by its manufacture, use, offer to sell, sale, and importation of the Accused Systems and Services together with its manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to meet the elements of the '808 Patent, as described above and incorporated by reference here.  Furthermore, Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

manufacturers also directly infringe these claims jointly with Hulu, to the extent specific components are provided by those third parties. To the extent Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers direct and control the methods in the claims, Hulu obtains benefits from the control of the system as a whole. Hulu requires its customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers to put the methods described in the claims into service to obtain the benefit of Hulu's services.

108.   Hulu's indirect infringement of the '808 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

109.   Hulu's indirect infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

110.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with U.S.C. §§ 283 and 285 for Hulu's indirect infringement.

**COUNT III**
**(Direct Infringement of the '539 Patent)**

111.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

57

COMPLAINT FOR                                         CASE NO.
PATENT INFRINGEMENT

112.    In violation of 35 U.S.C. § 271(a), Hulu directly infringed and continues to infringe at least Claim 1 of the '539 Patent by making, using, importing, selling, and offering for sale in the United States the Accused System and Services.

113.    Hulu's acts of making, using, importing, selling, and/or offering for sale the Accused Systems and Services have been without permission, consent, authorization, or license of Innovation Technologies.

114.    Hulu's infringement includes the manufacture, use, sale, importation, and/or offer for sale of the Accused Systems and Services, which infringe on the '539 Patent because they satisfy each element of the claims of the '539 Patent, either literally, or under the doctrine of equivalents, or both.

115.    By way of example of Hulu's infringement of the '539 Patent, the Accused Systems and Services meet all limitations of at least Claim 1 of the '539 Patent, which recites:

> A server system for collecting usage statistics and recommending targeted advertisements to a user of a mobile telecommunications device, the system comprising one or more processors adapted and programmed to:
>
>> receive usage statistics signed with a secret key from the user's mobile telecommunications device by tracking content usage of the user in accordance with a license associated with at least one piece of electronic content,
>>
>>> wherein the license is configured to be enforced by a digital rights management engine running on the mobile telecommunications device,

COMPLAINT FOR
PATENT INFRINGEMENT                                      CASE NO.

wherein the license comprises obligations that represent operations that the mobile telecommunications device must perform when use of the electronic content is requested, and

wherein the usage statistics include one or more types of events selected from the group consisting of: how many times advertisement is played, play/stop events, clicking on an advertisement, skipping forward and/or skipping back part of a content item or advertisement, voting for a content item, responding to a survey associated with a content item or advertisement with certain response, skipping a survey entirely, a content item was presented in its entirety, and application and/or content forwarding behaviors;

verify that the usage statistics signed with the secret key were received from the user's mobile telecommunications device;

classify, according to the usage statistics, the user of the mobile telecommunications device into one or more categories with varying degrees of affinity; and

recommend targeted advertisements for products and/or services based in part on the one or more categories into which the user of the mobile telecommunications device is classified.

116.    The Accused Systems and Services include a server system that collects customers' usage statistics and recommends targeted advertisements to the customer, who may be watching the streamed content via a phone or other electronic device. The '539 patent broadly defines mobile telecommunications devices as electronic devices for mobile voice or data communications. '539 Patent at 2:48-55. Hulu utilizes a collection of servers ("server system") to collect customer usage statistics as

59

explained below, for example, regarding "Usage and Log Data."  Hulu also utilizes the server system to recommend targeted advertisements in a variety of ways.



https://www.youtube.com/watch?v=aG70j4NqMeU

Usage and Log Data. We collect information when you use the Hulu Services or view Hulu advertising outside of the Hulu Services. Examples of this information may include your IP address, device, browser and software characteristics (such as type and operating system), location (which may include precise location data), activity on the Hulu Services including information about the videos you view on Hulu (e.g., show titles and episode names), page views, ad data, referral URLs, network state, device identifiers or other unique identifiers such as advertising identifiers (e.g., "ad-ID" or "IDFA") and identifiers associated with browser cookies (see our description of "Cookies and Local Storage" below), and carrier information.

Ex. 12 at 1 (https://press.hulu.com/privacy-policy/).

**Ad Choices:**

Hulu and our advertisers work with third parties (such as advertising technology companies and service providers that perform advertising-related services for us) who may collect and use information from or about you to help personalize ads for you based on your online activity across different websites and mobile apps (a process known as "interest-based advertising" or "online behavioral advertising"). You can opt out of these third parties' use of this information to provide you with interest-based advertising by exercising the options below. Please note that opting out will prevent the applicable third party from providing you with interest-based advertising, but you may still continue to see generic ads (non-personalized ads) even after you opt out.

Ex. 25 at 1 (https://www.hulu.com/ad-choices).

60

COMPLAINT FOR                                        CASE NO.
PATENT INFRINGEMENT

**How are ads personalized to me?**

There are a number of factors that affect the ads that you are seeing. What you're watching, where you're located, and what you've streamed previously can all help us personalize your ads so they're relevant to you.

Features like Ad Selector (which presents 2–3 different options so you can choose the ad that interests you most) also give viewers control over their experience. Other actions, such as interacting with the ad or pausing your video, can help create a more relevant and personalized experience.

Ex. 24 at 2 (https://help.hulu.com/article/hulu-ads-on-hulu#personalized).

117.   Hulu receives customers' usage statistics from their electronic devices and uses the collected information to recommend targeted ads to users.  As Hulu states on its website, it can track customers' reviews of content, clicks, completion rate for the content, and clickthrough rates, which measure the percentage of customers who click on an advertisement after seeing it ("CTRs.") It also manages the "encoding, hosting, and streaming of the video ads," and sets license requirements for the content.



Ex. 26 at 4 (https://hulu.disneyadvertising.com/ad-products/video-commercial/).

118.   Hulu may also receive data from service providers who use SDKs (Software Development Kits) that track information regarding how customers interact

61

with Hulu's content.  Hulu uses secret keys to collect data that identifies data

personalized to each user.

> • Mobile Device Identifiers and Software Development Kits ("SDKs"). We may use or work with third parties including our business partners and service providers who use mobile SDKs to collect information, such as advertising identifiers (e.g., "ad-ID" or "IDFA") and information related to how mobile devices interact with the Hulu Services. An SDK is computer code that app developers can include in their apps to enable ads to be shown, data to be collected and related services and functionality to be implemented. A mobile SDK is in effect the mobile app version of a pixel tag or beacon. We may use this technology, for instance, to analyze how you interact with Content and advertisements and to enable analytics or other features through mobile devices.

Ex. 12 at 2 (https://press.hulu.com/privacy-policy/).

> • On your mobile device, you may also go to your device settings and select "Limit Ad Tracking" (for iOS devices) or "Opt out of Interest-Based Ads" (for Android devices), which will allow you to limit our use of information collected from or about your mobile device (such as precise location data) for the purposes of serving online behavioral advertising to you.
> • Opt-Out from Collection of Precise Location Data from Your Mobile Device
> • You can opt out of our collection of precise location data from your mobile device in your device settings, for example, by disabling "Location Services" for the Hulu application in your iOS device's settings. Please note that by opting out of our collection of precise location data, your access to the Hulu Services on your mobile device may be limited depending on your subscription.

Id. at 6 (https://press.hulu.com/privacy-policy/).

> Your Browsers and Devices. We may work with service providers who use information collected from or about you to help us identify the browsers and devices you use for various purposes, including for targeted advertising, analytics, attribution, and measurement purposes. For example, these service providers (along with Hulu) may use your activity on one browser or device to serve you with more tailored advertising on another browser or device. In connection with your use of browsers and devices, please note that certain opt-out choices you have as described in Section 7 ("Your Choices, Including Opt-Out Options") apply only to the specific browser or device from which you opt out.
>
> Advertisers and Advertising-Related Service Providers. We may share the information collected from or about you in encrypted, aggregated, or de-identified forms with advertisers and service providers that perform advertising-related services for us and our business partners in order to tailor advertisements, measure and improve advertising effectiveness, and enable other enhancements. This information includes your use of the Hulu Services, websites you visited, advertisements you viewed, and your other activities online.
>
> Audience Measurement Providers. Our business partners, such as content programmers, as well as our advertisers, seek to measure the performance of their creative material across many platforms, including the Hulu Services. Accordingly, Hulu may permit the use of third-party measurement software that enables third parties (such as Nielsen) to include your viewing on the Hulu Services in calculating measurement statistics such as TV Ratings. To learn more about your choices with respect to Nielsen measurement software, please see the information we have provided in Section 7 ("Your Choices, Including Opt-Out Options").

Id. at 3-4 (https://press.hulu.com/privacy-policy/).

119.   Hulu's streaming services are governed by digital rights management

mechanisms, including licenses, that customers must follow.  The digital rights

management engines can enforce licenses, which may obligate the electronic device

to perform specific operations when the use of the electronic content is requested.

COMPLAINT FOR                                CASE NO.
PATENT INFRINGEMENT

For example, the license may require that an advertisement be played in its entirety and not be skipped.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

120.   Hulu states on its website that it can track customers' interactions with advertisements, including pausing advertisements.  Hulu can also track the completion rates of advertisements (i.e., how much of the advertised content customers actually view before skipping through it, if that is an option).

**How are ads personalized to me?**

There are a number of factors that affect the ads that you are seeing. What you're watching, where you're located, and what you've streamed previously can all help us personalize your ads so they're relevant to you.

Features like Ad Selector (which presents 2–3 different options so you can choose the ad that interests you most) also give viewers control over their experience. Other actions, such as interacting with the ad or pausing your video, can help create a more relevant and personalized experience.

Ex. 24 at 2 (https://help.hulu.com/article/hulu-ads-on-hulu#personalized).

**Metrics Available**

- Impressions
- Clicks
- Completion rate
- CTR

COMPLAINT FOR                                                    CASE NO.
PATENT INFRINGEMENT

Ex. 26 at 4 (https://hulu.disneyadvertising.com/ad-products/video-commercial/).

121.    Hulu then verifies customers' encrypted usage statistics were received from the customer's electronic device.

122.    As noted above, Hulu uses tracking technologies to collect information about its customers.

**3. Use of Information We Collect**

Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:

- providing the Hulu Services;
- contacting you, including for promotional purposes;
- customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
- identifying Content you share;
- customizing recommendations;
- conducting research;
- compiling aggregate data for internal and external business purposes;
- preventing potentially illegal or harmful activities, including fraud;
- protecting your and our rights;
- other uses in accordance with our Terms of Use; and
- any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.

Ex. 12 at 2-3 (https://press.hulu.com/privacy-policy/).

123.    Thus, the Accused Systems and Services satisfy all elements of at least Claim 1 of the '539 Patent.

124.    Hulu's direct infringement of the '539 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

125.    Hulu's infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

126.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283 and 285 for Hulu's direct infringement of the '539 Patent.

## COUNT IV
### (Indirect Infringement of the '539 Patent)

127.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

128.   As set forth above, Hulu has had knowledge of Innovation Technologies' patents and of its infringement of the '539 Patent since prior to the filing of this Complaint.

129.   As set forth above, the Accused Systems and Services directly infringe the '539 Patent.  Additionally, Hulu has actively, knowingly, and intentionally induced and continues to induce infringement of one or more claims of the '539 Patent pursuant to 35 U.S.C. § 271(b); and has contributorily infringed and continues to contributorily infringe one or more claims of the '539 Patent under 35 U.S.C. § 271(c).

130.   Hulu indirectly infringes the '539 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including customers, purchasers, shoppers, users, and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '539 Patent, where all the steps of the method claims are performed by either Hulu, its customers,

65

purchasers, shoppers, users, and developers, or some combination thereof.  For

example, Hulu requires customers to follow its digital rights management

mechanisms and stream content according to the terms of applicable licenses and

contracts.  Hulu also requires content producers and developers, including advertisers

and other third parties, to adhere to the guidelines set forth in applicable licenses and

contracts.

> **3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

> This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

131.   Thus, Hulu knew or was willfully blind to the fact that it was inducing

others, including customers, purchasers, shoppers, users, and developers, to infringe

by practicing, either themselves or in conjunction with Hulu, one or more method

claims of the '539 Patent, including at least Claim 1.

66

COMPLAINT FOR                                CASE NO.
PATENT INFRINGEMENT

132.    Hulu knowingly and actively aided and abetted the direct infringement of the '539 Patent by instructing and encouraging its customers, purchasers, shoppers, users, and developers to use its Accused Systems and Services, as shown above. Such instructions and encouragement include, but are not limited to, advising third parties to use the Accused Systems and Services in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Systems and Services in an infringing manner.  Further examples of this instruction and encouragement include, for example, trainings by Hulu either in-person or by instructional videos and material, for its content developers and customers as to how to utilize the Hulu application, and how to stream and create content by utilizing Hulu's applications, technology, or website.

133.    Hulu updates and maintains help and customer service sections on its website which cover in-depth aspects of operating the Accused Systems and Services in an infringing manner and instruct consumers and content developers on how to configure and use the Accused Systems and Services in an infringing manner.  *See*, *e.g.*, Ex. 24 (https://help.hulu.com/article/hulu-ads-on-hulu); Ex. 17 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

134.    Hulu has knowingly and actively contributed to the direct infringement of the '539 Patent by its manufacture, use, offer to sell, sale and importation of the Accused Systems and Services together with its manufacturers, customers,

67

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

purchasers, shoppers, users, developers, and/or vendors to meet the elements of the '539 Patent, as described above and incorporated by reference here.  Furthermore, Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers also directly infringe these claims jointly with Hulu, to the extent specific components are provided by those third parties.  To the extent Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers direct and control the methods in the claims, Hulu obtains benefits from the control of the system as a whole.  Hulu requires its customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers to put the methods described in the claims into service to obtain the benefit of Hulu's services.

135.   Hulu's indirect infringement of the '539 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

136.   Hulu's indirect infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

137.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with U.S.C. §§ 283 and 285 for Hulu's indirect infringement.

COMPLAINT FOR
PATENT INFRINGEMENT                                    CASE NO.

## COUNT V
### (Direct Infringement of the '972 Patent)

138.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

139.   In violation of 35 U.S.C. § 271(a), Hulu directly infringed and continues to infringe at least Claim 1 of the '972 Patent by making, using, importing, selling, and offering for sale in the United States the Accused System and Services.

140.   Hulu's acts of making, using, importing, selling, and/or offering for sale the Accused Systems and Services have been without permission, consent, authorization, or license of Innovation Technologies.

141.   Hulu's infringement includes the manufacture, use, sale, importation, and/or offer for sale of the Accused Systems and Services, which infringe on the '972 Patent because they satisfy each element of the claims of the '972 Patent, either literally, or under the doctrine of equivalents, or both.

142.   By way of example of Hulu's infringement of the '972 Patent, the Accused Systems and Services meet all limitations of at least Claim 1 of the '972 Patent, which recites:

A method performed by one or more computing devices for distributing an electronic content item for consumption with advertisements, the method comprising:

creating, by at least one of the one or more computing devices, a content electronic license, the content electronic license identifying one or more slots within the electronic content item

COMPLAINT FOR                                        CASE NO.
PATENT INFRINGEMENT

at which the advertisements are to be inserted, the content electronic license further specifying one or more types of advertisements that are not permitted to be inserted into the one or more slots, the content electronic license further specifying criteria for selecting the advertisements to insert into the one or more slots from amongst a plurality of advertisements, wherein the advertisements to insert into the one or more slots are selected by evaluating technical capabilities of a third-party device of a consumer of the electronic content item that renders the electronic content item, the technical capabilities of the third-party device including at least one of CPU performance, network connectivity, and local storage space;

securely associating, by at least one of the one or more computing devices, the content electronic license with the electronic content item;

distributing the electronic content item and the content electronic license to the third-party device that renders the electronic content item;

selecting, by the third-party device that renders the electronic content item, an advertisement to insert into one of the one or more slots by evaluating bids made in association with each of the plurality of advertisements, wherein the selected advertisement yields the highest revenue out of the plurality of advertisements for a content provider of the electronic content item, and by using the criteria specified by the content electronic license, the selection of the advertisement being performed after the third-party device that renders the electronic content item receives instructions to render the electronic content item;

inserting, by the third-party device, the selected advertisement into the one of the one or more slots; and

receiving information from a clearinghouse regarding the advertisement selected for insertion into the one or more slots.

70

COMPLAINT FOR                                        CASE NO.
PATENT INFRINGEMENT

143.   The Accused Systems and Services include performing a method that determines which advertisements to circulate with electronic content to customers who are using its streaming services on their electronic devices.

144.   Hulu's content producers, including advertisers and other third parties, must adhere to the guidelines set forth in applicable licenses and contracts.

> This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

145.   The content electronic license and Hulu's guidelines for content producers require timeslots (i.e., "ad pods" and "ad breaks") within the streamed content for the advertisements to be inserted.  The content can include "burned in advertising" (i.e., advertisements that are permanently baked into the content file) and "dynamic advertising," which are advertisements that are added in real-time as users stream their content.

> **6.3.2.2 Ad Pods**
>
> For an asset where advertising is burned into the video, Hulu requires metadata indicating the unique start/stop timecodes of each ad pod. In the example below, the asset delivered contains 4 ad pods:
>
> ```
> <App_Data App="MOD" Name="Ad_Pod" Value="00:02:18;05,00:05:18;05"/>
> <App_Data App="MOD" Name="Ad_Pod" Value="00:08:46;32,00:10:25;36"/>
> <App_Data App="MOD" Name="Ad_Pod" Value="00:15:16;56,00:16:51;00"/>
> <App_Data App="MOD" Name="Ad_Pod" Value="00:20:40;12,00:22:19;20"/>
> ```

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

*Id.* at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).



6.3.2.3 Ad Breaks

As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.

<App_Data App="MOD" Name="Ad_Breaks"
Value="00:06:18;05,00:13:26;21,00:23:41;18"/>

As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

*Id.* (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

146.    Hulu's content electronic licenses specify the types of advertisements that are not permitted to be inserted into slots within content.  For example, advertisements that are rated R cannot be inserted into streamed content that is rated G.



I don't know why I'm seeing this type of ad

The ratings of the ads you see should align with the rating of the content you're watching. For example, if you're watching an R rated movie or a TV-MA show, you may see ads geared towards a more mature audience. When you're watching content with a G or TV-Y rating, you should see ads for a younger audience.

If you come across an ad you don't think you should be seeing, please contact us so we can investigate further.

Ex. 18 at 1 (https://help.hulu.com/article/hulu-ads-concerns).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

### 4.3.5 Ratings

Accurate and complete ratings information is an important part of Hulu's metadata standard. If a rating exists for your content, it is very important that it be delivered accurately in the metadata. If no rating is delivered in the metadata, Hulu reserves the right to apply one according to its own standards and practices.

Only enter a rating for TV and Film content if the original network or MPAA has given a rating to the content. If the content is not rated, use the "Not Rated" option.

If the content is meant for adults only, it's critical that it be rated appropriately; this will ensure that the video is age-gated. **If the content is Not Rated but is of an adult nature (e.g., nudity, adult situations, profanity, drug use, extreme violence) please alert your Content Partner Manager so that we may set the appropriate age-gate on the content.**

In the chart below, the RED values indicate the player will verify the user's age.

| RATING | |
|---|---|
| **TV** | **Film Ratings (MPAA)** |
| TV-Y | G (General) |
| TV-Y7 | PG (Parental Guidance) |
| TV-Y7-FV | PG-13 (Parental - 13) |
| TV-G | R (Restricted) |
| TV-PG | NC-17 (No one under 17) |
| TV-14 | X (Adults only) |
| TV-MA | Not Rated |
| Not Rated | Not Yet Rated (FOR USE WITH TRAILERS ONLY) |

Ex. 17 at 18
(https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

147.   As noted above, when there is dynamic advertising—meaning there is room for advertisements that have not already been baked into the content file—Hulu determines the appropriate advertisements to display for customers.  This determination can be based on the customer's location, demographics (e.g., age group), and how well the advertisement has performed previously.

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

**3. Use of Information We Collect**

Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:

- providing the Hulu Services;
- contacting you, including for promotional purposes;
- customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
- identifying Content you share;
- customizing recommendations;
- conducting research;
- compiling aggregate data for internal and external business purposes;
- preventing potentially illegal or harmful activities, including fraud;
- protecting your and our rights;
- other uses in accordance with our Terms of Use; and
- any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.

Use of Payment Information. We use payment information, such as credit card numbers and billing ZIP code, to help provide the Hulu Services. For example, we use payment information to process payments from a subscriber (we use a third-party payment processor to do this), to retrieve account information for a subscriber, to determine whether a subscriber is eligible for promotions, and to detect abuse of the Hulu Services.

Use of Precise Location Data. In order to access certain Hulu Services from your mobile device, you may be required to share your device's precise location data (e.g., latitude and longitude) with us. In addition to providing you with certain Hulu Services, this also enables us to serve you Content related to your local area such as news and sports, depending on your subscription. This data may also be used to tailor advertising to you based on your location. To learn more about your choices with respect to our collection and use of precise location data, please see the information we have provided in Section 7 ("Your Choices, Including Opt-Out Options").

Use of Aggregate or De-Identified Information. In addition to the individual data use described in this Privacy Policy, we may aggregate information about you and other individuals together, or otherwise "de-identify" the information about you (which means that the information does not identify you personally).

We may use information in these forms for any legitimate business purpose, including for research and analysis, administration of the Hulu Services, advertising (e.g., improving our targeting efforts), and promotional purposes.

Ex. 12 at 2-3 (https://press.hulu.com/privacy-policy/).

148.    Hulu considers the technical capabilities of third-party devices when deciding on the advertisements it will insert into the streamed content.  For example, Hulu requires "high-speed broadband, wireless or similar internet connection."  It also states that the device must meet "system and compatibility requirements."

**3.8 Compatible Devices.** In order to access the Services, you will need to use a computer, mobile device, streaming media player, or other device that meets the system and compatibility requirements that we establish from time to time (each, a "Compatible Device"). Please visit our Help Center at hulu.com/help for a current list of Compatible Devices. Please note that Compatible Devices may vary by Service, and may be subject to additional terms. For example, certain devices may not be capable of streaming Content from the Live TV Service but may be capable of streaming other Content. Features and functionalities that we make available through the Services may also differ by Compatible Device and the terms of your subscription. If you access the Services using a Compatible Device, the third-party that offers that Compatible Device shall be a third-party beneficiary to these Terms, but is not a party to these Terms.

**3.9 Simultaneous Streams.** The number of simultaneous streams of Content that you can access varies by Service and may require device and account verification. Please visit our Help Center at hulu.com/help for the most up to date information on the number of simultaneous streams of Content that are allowed based on the terms of your Service. Where relevant to your Service, "in-home" streams are those that you stream through your Home internet service, and "out-of-home" streams are those that you stream through a connection to a cellular or Wi-Fi network outside of your Home.

**3.10 Internet Service and Data Usage.** In order to access the Services, you must have a high-speed broadband, wireless or similar internet connection from an internet service provider that meets certain technical specifications. Please note that multiple simultaneous streams, as well as HD and 4K Ultra HD Content, may require higher internet bandwidth. You are responsible for any costs associated with your internet service used to access the Services. Your use of the Services may count toward your data usage, depending on the terms of your agreement with your internet service provider.

74

COMPLAINT FOR                                           CASE NO.
PATENT INFRINGEMENT

Ex. 11 at 3-4 (https://www.hulu.com/terms-apr-13-2022).

149.    Hulu provides information regarding the advertisement that was selected for insertion, such as its unique ID value.



Ex. 17 at 36 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

150.    The content stream containing the advertisements is subsequently streamed on the user's device.

151.    The customer's device determines the advertisements to render at the direction of various criteria outlined by the content electronic license.  For example, the device may be instructed to select advertisements that generate the most revenue.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

**6.3.1.9 External ID**

This denotes a Content Partner's internal, unique ID for this piece of content. This ID will be utilized for third party ad serving needs. It will also be included in financial and reporting data for tracking purposes.

This is a string and is limited to 1000 characters.

`<App_Data App="MOD" Name="Ad_Content_ID" Value="123ABC456"/>`

Ex. 17 at 36 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

152.    Once the advertisement is selected, the customer's device will pause the streamed content, play the selected advertisement, and resume playing the streamed content when the advertisement concludes.

**DAI (Dynamic Ad Insertion):** Within the context of Hulu's services, the acronym DAI refers to Dynamic Ad Insertion and only occurs within Clean assets. In this experience, Hulu stores ad segment information as singular timecodes. Playback of content is paused at these times and a call to an ad server is made to present the user with advertising. When the advertising has completed, playback of the content resumes from the same timecode.

**DAR (Dynamic Ad Replacement):** Within the context of Hulu's services, the acronym DAR refers to Dynamic Ad Replacement and only occurs within Limited assets. In this experience, Hulu stores ad pod information as two timecodes, indicating the start and stop of the ad pod. Playback of content is paused at the start of the embedded ad pod and a call to an ad server is made to present the user with advertising. When the advertising has completed, playback of the content resumes at the stop timecode of the embedded ad pod.

**C Window Asset:** Within the context of Hulu's services, a C Window asset is one that contains burned-in advertising which has been guaranteed to be served to users over a period of time. For example, an asset in a "C3" window would contain advertising that was guaranteed to be shown to users on the day of original broadcast and for three days after. All C Window assets are Limited assets, but not all Limited assets are C Window assets.

*Id*. at 9 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

> **6.3.2.3 Ad Breaks**
>
> As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.
>
> `<App_Data App="MOD" Name="Ad_Breaks"`
> `Value="00:06:18;05,00:13:26;21,00:23:41;18"/>`
>
> As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

*Id*. at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

153.    Hulu's ad server provides financial and reporting data regarding the advertisement that has been selected for the open timeslot.

> **6.3.1.9 External ID**
>
> This denotes a Content Partner's internal, unique ID for this piece of content. This ID will be utilized for third party ad serving needs. It will also be included in financial and reporting data for tracking purposes.
>
> This is a string and is limited to 1000 characters.
>
> `<App_Data App="MOD" Name="Ad_Content_ID" Value="123ABC456"/>`

*Id*. at 36 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

154.    Thus, the Accused Systems and Services satisfy all elements of at least Claim 1 of the '972 Patent.

155.    Hulu's direct infringement of the '972 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

156.    Hulu's infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

157.    Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283 and 285 for Hulu's direct infringement of the '972 Patent.

## COUNT VI
### (Indirect Infringement of the '972 Patent)

158.    Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

159.    As set forth above, Hulu has had knowledge of Innovation Technologies' patents and of its infringement of the '972 Patent since prior to the filing of this Complaint.

160.    As set forth above, the Accused Systems and Services directly infringe the '972 Patent.  Additionally, Hulu has actively, knowingly, and intentionally induced and continues to induce infringement of one or more claims of the '808 Patent pursuant to 35 U.S.C. § 271(b); and has contributorily infringed and continues to contributorily infringe one or more claims of the '972 Patent under 35 U.S.C. § 271(c).

161.    Hulu indirectly infringes the '972 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including customers, purchasers, shoppers, users, and developers, to perform one or more of the steps of the method

78

COMPLAINT FOR
PATENT INFRINGEMENT                                    CASE NO.

claims, either literally or under the doctrine of equivalents, of the '972 Patent, where all the steps of the method claims are performed by either Hulu, its customers, purchasers, shoppers, users, and developers, or some combination thereof. For example, Hulu requires customers to follow its digital rights management mechanisms and stream content according to the terms of applicable licenses and contracts. Hulu also requires content producers and developers, including advertisers and other third parties, to adhere to the guidelines set forth in applicable licenses and contracts.

> **3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

> This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

    162. Thus, Hulu knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, shoppers, users, and developers, to infringe by practicing, either themselves or in conjunction with Hulu, one or more method claims of the '972 Patent, including at least Claim 1.

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

163. Hulu knowingly and actively aided and abetted the direct infringement of the '972 Patent by instructing and encouraging its customers, purchasers, shoppers, users, and developers to use its Accused Systems and Services, as shown above. Such instructions and encouragement include, but are not limited to, advising third parties to use the Accused Systems and Services in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Systems and Services in an infringing manner. Further examples of this instruction and encouragement include, for example, trainings by Hulu either in-person or by instructional videos and material, for its content developers and customers as to how to utilize the Hulu application, and how to stream and create content by utilizing Hulu's applications, technology, or website.

164. Hulu updates and maintains help and customer service sections on its website which cover in-depth aspects of operating the Accused Systems and Services in an infringing manner and instruct consumers and content developers on how to configure and use the Accused Systems and Services in an infringing manner. *See, e.g.*, Ex. 24 (https://help.hulu.com/article/hulu-ads-on-hulu); Ex. 17 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

165. Hulu has knowingly and actively contributed to the direct infringement of the '972 Patent by its manufacture, use, offer to sell, sale and importation of the Accused Systems and Services together with its manufacturers, customers,

80

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

purchasers, shoppers, users, developers, and/or vendors to meet the elements of the '972 Patent, as described above and incorporated by reference here. Furthermore, Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers also directly infringe these claims jointly with Hulu, to the extent specific components are provided by those third parties. To the extent Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers direct and control the methods in the claims, Hulu obtains benefits from the control of the system as a whole. Hulu requires its customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers to put the methods described in the claims into service to obtain the benefit of Hulu's services.

166.   Hulu's indirect infringement of the '972 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

167.   Hulu's indirect infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with U.S.C. §§ 283 and 285 for Hulu's indirect infringement.

COMPLAINT FOR
PATENT INFRINGEMENT                              CASE NO.

## COUNT VII
### (Direct Infringement of the '831 Patent)

168.    Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

169.    In violation of 35 U.S.C. § 271(a), Hulu directly infringed and continues to infringe at least Claim 1 of the '831 Patent by making, using, importing, selling, and offering for sale in the United States the Accused System and Services.

170.    Hulu's acts of making, using, importing, selling, and/or offering for sale the Accused Systems and Services have been without permission, consent, authorization, or license of Innovation Technologies.

171.    Hulu's infringement includes the manufacture, use, sale, importation, and/or offer for sale of the Accused Systems and Services, which infringe on the '831 Patent because they satisfy each element of the claims of the '831 Patent, either literally, or under the doctrine of equivalents, or both.

172.    By way of example of Hulu's infringement of the '831 Patent, the Accused Systems and Services meet all limitations of at least Claim 1 of the '831 Patent, which recites:

A method performed by an electronic device for rendering content, the method comprising:

receiving, at an electronic device, a first content item and a first electronic content license securely associated with the first content item, the first electronic content license identifying one or more slots within the first content item at which one or more second content

82

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

items may be inserted and specifying one or more criteria for selecting content items to insert into the one or more slots within the first content item;

receiving a request to render the first content item using the electronic device;

selecting, based on information included in the first electronic content license, at least one content item of the one or more second content items to insert into at least one of the one or more slots within the first content item, wherein the selecting comprises:

evaluating the one or more second content items against the one or more criteria, and

evaluating one or more bids made in association with each of the one or more second content items against at least one objective function, wherein the selected content item of the one or more second content item maximizes the objective function,

wherein the selecting is further based on at least one technical capability associated with a permitted rendering device, the at least one technical capability comprising at least one of processing performance, network connectivity, and local storage space; and

rendering the first content item using the electronic device, wherein rendering the first content item comprises:

inserting, by the electronic device, the selected content item into the at least one of the one or more slots within the first content item in connection with rendering the first content item by the electronic device.

173.    The Accused Systems and Services perform the following method in determining which advertisements to circulate to customers who are using its streaming services and are playing content on their electronic devices.

83

174.   The user's electronic device must adhere to Hulu's applicable licenses, contracts, and guidelines when streaming content, such as movies, or television shows.  Content producers, including advertisers and other third parties, must also adhere to Hulu's applicable licenses, contracts, and guidelines when creating their content.

> This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

175.   The electronic content license and Hulu's guidelines for content producers require timeslots (i.e., "ad pods" and "ad breaks") within the streamed content for the advertisements to be inserted.  The content can include "burned in advertising" (i.e., advertisements that are permanently baked into the content file) and "dynamic advertising," which are advertisements that are added in real-time as users stream their content.

> **6.3.2.3 Ad Breaks**
>
> As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.
>
> `<App_Data App="MOD" Name="Ad_Breaks"`
> `Value="00:06:18;05,00:13:26;21,00:23:41;18"/>`
>
> As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

*Id.* at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

84

COMPLAINT FOR                                   CASE NO.
PATENT INFRINGEMENT

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 ([https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/](https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/)).

**6.3.2.3 Ad Breaks**

As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.

`<App_Data App="MOD" Name="Ad_Breaks"`
`Value="00:06:18;05,00:13:26;21,00:23:41;18"/>`

As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

Ex. 17 at 37 ([https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf](https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf)).

**DAI (Dynamic Ad Insertion)**: Within the context of Hulu's services, the acronym DAI refers to Dynamic Ad Insertion and only occurs within Clean assets. In this experience, Hulu stores ad segment information as singular timecodes. Playback of content is paused at these times and a call to an ad server is made to present the user with advertising. When the advertising has completed, playback of the content resumes from the same timecode.

**DAR (Dynamic Ad Replacement):** Within the context of Hulu's services, the acronym DAR refers to Dynamic Ad Replacement and only occurs within Limited assets. In this experience, Hulu stores ad pod information as two timecodes, indicating the start and stop of the ad pod. Playback of content is paused at the start of the embedded ad pod and a call to an ad server is made to present the user with advertising. When the advertising has completed, playback of the content resumes at the stop timecode of the embedded ad pod.

**C Window Asset:** Within the context of Hulu's services, a C Window asset is one that contains burned-in advertising which has been guaranteed to be served to users over a period of time. For example, an asset in a "C3" window would contain advertising that was guaranteed to be shown to users on the day of original broadcast and for three days after. All C Window assets are Limited assets, but not all Limited assets are C Window assets.

*Id.* at 9 ([https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf](https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf)).

176.    As noted above, when there is dynamic advertising—meaning there is room for advertisements that have not already been baked into the content file—Hulu determines the appropriate advertisements to display for customers. This

85

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

determination can be based on the customer's location, demographics (e.g., age group), and how well the advertisement has performed previously.

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

> **3. Use of Information We Collect**
> Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:
>
> - providing the Hulu Services;
> - contacting you, including for promotional purposes;
> - customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
> - identifying Content you share;
> - customizing recommendations;
> - conducting research;
> - compiling aggregate data for internal and external business purposes;
> - preventing potentially illegal or harmful activities, including fraud;
> - protecting your and our rights;
> - other uses in accordance with our Terms of Use; and
> - any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.
>
> Use of Payment Information. We use payment information, such as credit card numbers and billing ZIP code, to help provide the Hulu Services. For example, we use payment information to process payments from a subscriber (we use a third-party payment processor to do this), to retrieve account information for a subscriber, to determine whether a subscriber is eligible for promotions, and to detect abuse of the Hulu Services.
>
> Use of Precise Location Data. In order to access certain Hulu Services from your mobile device, you may be required to share your device's precise location data (e.g., latitude and longitude) with us. In addition to providing you with certain Hulu Services, this also enables us to serve you Content related to your local area such as news and sports, depending on your subscription. This data may also be used for advertising to you based on your location. To learn more about your choices with respect to our collection and use of precise location data, please see the information we have provided in Section 7 ("Your Choices, Including Opt-Out Options").
>
> Use of Aggregate or De-Identified Information. In addition to the individual data use described in this Privacy Policy, we may aggregate information about you and other individuals together, or otherwise "de-identify" the information about you (which means that the information does not identify you personally).
>
> We may use information in these forms for any legitimate business purpose, including for research and analysis, administration of the Hulu Services, advertising (e.g., improving our targeting efforts), and promotional purposes.

Ex. 12 at 2-3 (https://press.hulu.com/privacy-policy/).

177.   The electronic device receives a request to render the content to be streamed.

178.   The customer's device, including programming elements and the electronic content license, determines the advertisements to render.  For example, the device may be instructed to select advertisements that generate the most revenue.

COMPLAINT FOR
PATENT INFRINGEMENT                                    CASE NO.

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

> **6.3.1.9 External ID**
>
> This denotes a Content Partner's internal, unique ID for this piece of content. This ID will be utilized for third party ad serving needs. It will also be included in financial and reporting data for tracking purposes.
>
> This is a string and is limited to 1000 characters.
>
> `<App_Data App="MOD" Name="Ad_Content_ID" Value="123ABC456"/>`

Ex. 17 at 36 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

179.   The customer's device, at the direction of Hulu's electronic content license, evaluates the potential advertisements (i.e., content items) against various criteria to determine which one to insert. As an example, Hulu will generate advertisements that are targeted toward customers' interests and behaviors.



COMPLAINT FOR                                CASE NO.
PATENT INFRINGEMENT

https://www.youtube.com/watch?v=IraVELyEgz0&t=60s

**How are ads personalized to me?**

There are a number of factors that affect the ads that you are seeing. What you're watching, where you're located, and what you've streamed previously can all help us personalize your ads so they're relevant to you.

Ex. 24 at 2 (https://help.hulu.com/article/hulu-ads-on-hulu).



Ex. 13 at 2 (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).

To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

**6.3.1.9 External ID**

This denotes a Content Partner's internal, unique ID for this piece of content. This ID will be utilized for third party ad serving needs. It will also be included in financial and reporting data for tracking purposes.

This is a string and is limited to 1000 characters.

`<App_Data App="MOD" Name="Ad_Content_ID" Value="123ABC456"/>`

Ex. 17 at 36 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

180. Hulu considers the technical capabilities of third-party devices when deciding on the advertisements it will insert into the streamed content. For example, Hulu requires "high-speed broadband, wireless or similar internet connection." It also states that the device must meet "system and compatibility requirements."

**3.8 Compatible Devices.** In order to access the Services, you will need to use a computer, mobile device, streaming media player, or other device that meets the system and compatibility requirements that we establish from time to time (each, a "Compatible Device"). Please visit our Help Center at hulu.com/help for a current list of Compatible Devices. Please note that Compatible Devices may vary by Service, and may be subject to additional terms. For example, certain devices may not be capable of streaming Content from the Live TV Service but may be capable of streaming other Content. Features and functionalities that we make available through the Services may also differ by Compatible Device and the terms of your subscription. If you access the Services using a Compatible Device, the third-party that offers that Compatible Device shall be a third-party beneficiary to these Terms, but is not a party to these Terms.

**3.9 Simultaneous Streams.** The number of simultaneous streams of Content that you can access varies by Service and may require device and account verification. Please visit our Help Center at hulu.com/help for the most up to date information on the number of simultaneous streams of Content that are allowed based on the terms of your Service. Where relevant to your Service, "in-home" streams are those that you stream through your Home internet service, and "out-of-home" streams are those that you stream through a connection to a cellular or Wi-Fi network outside of your Home.

**3.10 Internet Service and Data Usage.** In order to access the Services, you must have a high-speed broadband, wireless or similar internet connection from an internet service provider that meets certain technical specifications. Please note that multiple simultaneous streams, as well as HD and 4K Ultra HD Content, may require higher internet bandwidth. You are responsible for any costs associated with your internet service used to access the Services. Your use of the Services may count toward your data usage, depending on the terms of your agreement with your internet service provider.

Ex. 11 at 3-4 (https://www.hulu.com/terms-apr-13-2022).

181. The customer's device then renders the content to be streamed.

89

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

182.    Once the advertisement is selected, the customer's device will pause the streamed content, play the selected advertisement, and resume playing the streamed content when the advertisement concludes.



Ex. 17 at 9
(https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

COMPLAINT FOR                                              CASE NO.
PATENT INFRINGEMENT

---

**6.3.2.3 Ad Breaks**

As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.

```
<App_Data App="MOD" Name="Ad_Breaks"
Value="00:06:18;05,00:13:26;21,00:23:41;18"/>
```

As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

---

*Id.* at 37
(https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

183.    Thus, the Accused Systems and Services satisfy all elements of at least Claim 1 of the '831 Patent.

184.    Hulu's direct infringement of the '831 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

185.    Hulu's infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

186.    Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283 and 285 for Hulu's direct infringement of the '831 Patent.

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

## COUNT VIII
### (Indirect Infringement of the '831 Patent)

187.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

188.   As set forth above, Hulu has had knowledge of Innovation Technologies' patents and of its infringement of the '831 Patent since prior to the filing of this Complaint.

189.   As set forth above, the Accused Systems and Services directly infringe the '831 Patent.  Additionally, Hulu has actively, knowingly, and intentionally induced and continues to induce infringement of one or more claims of the '831 Patent pursuant to 35 U.S.C. § 271(b); and has contributorily infringed and continues to contributorily infringe one or more claims of the '831 Patent under 35 U.S.C. § 271(c).

190.   Hulu indirectly infringes the '831 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including customers, purchasers, shoppers, users, and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '831Patent, where all the steps of the method claims are performed by either Hulu, its customers, purchasers, shoppers, users, and developers, or some combination thereof.  For example, Hulu requires customers to follow its digital rights management mechanisms and stream content according to the terms of applicable licenses and

92

contracts. Hulu also requires content producers and developers, including advertisers and other third parties, to adhere to the guidelines set forth in applicable licenses and contracts.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

191. Thus, Hulu knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, shoppers, users, and developers, to infringe by practicing, either themselves or in conjunction with Hulu, one or more method claims of the '831 Patent, including at least Claim 1.

192. Hulu knowingly and actively aided and abetted the direct infringement of the '831 Patent by instructing and encouraging its customers, purchasers, shoppers, users, and developers to use its Accused Systems and Services, as shown above. Such instructions and encouragement include, but are not limited to, advising third

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

parties to use the Accused Systems and Services in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Systems and Services in an infringing manner.  Further examples of this instruction and encouragement include, for example, trainings by Hulu either in-person or by instructional videos and material, for its content developers and customers as to how to utilize the Hulu application, and how to stream and create content by utilizing Hulu's applications, technology, or website.

193.    Hulu updates and maintains help and customer service sections on its website which cover in-depth aspects of operating the Accused Systems and Services in an infringing manner and instruct consumers and content developers on how to configure and use the Accused Systems and Services in an infringing manner.  *See*, e.g., Ex. 24 (https://help.hulu.com/article/hulu-ads-on-hulu); Ex. 17 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

194.    Hulu has knowingly and actively contributed to the direct infringement of the '831 Patent by its manufacture, use, offer to sell, sale and importation of the Accused Systems and Services together with its manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to meet the elements of the '831 Patent, as described above and incorporated by reference here.  Furthermore, Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers also directly infringe these claims jointly with Hulu, to the extent

94

specific components are provided by those third parties.  To the extent Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers direct and control the methods in the claims, Hulu obtains benefits from the control of the system as a whole.  Hulu requires its customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers to put the methods described in the claims into service to obtain the benefit of Hulu's services.

195.   Hulu's indirect infringement of the '831 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

196.   Hulu's indirect infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

197.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with U.S.C. §§ 283 and 285 for Hulu's indirect infringement.

## COUNT IX
### (Direct Infringement of the '912 Patent)

198.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

199.    In violation of 35 U.S.C. § 271(a), Hulu directly infringed and continues to infringe at least Claim 1 of the '912 Patent by making, using, importing, selling, and offering for sale in the United States the Accused System and Services.

200.    Hulu's acts of making, using, importing, selling, and/or offering for sale the Accused Systems and Services have been without permission, consent, authorization, or license of Innovation Technologies.

201.    Hulu's infringement includes the manufacture, use, sale, importation, and/or offer for sale of the Accused Systems and Services, which infringe on the '912 Patent because they satisfy each element of the claims of the '912 Patent, either literally, or under the doctrine of equivalents, or both.

202.    By way of example of Hulu's infringement of the '912 Patent, the Accused Systems and Services meet all limitations of at least Claim 1 of the '912 Patent, which recites:

A method performed by an electronic device for rendering content, the method comprising:

receiving, at a network interface of the electronic device, a first content item and a first electronic content license securely associated with the first content item, the first electronic content license identifying one or more content insertion slots within the first content item and specifying one or more criteria for selecting content items to insert into the one or more content insertion slots within the first content item;

receiving, at the network interface of the electronic device, one or more second content items, the one or more second content items being selected for transmission to the electronic device

96

based, at least in part, on at least one capability of the electronic device;

receiving a request to render the first content item using the electronic device;

selecting, using a digital rights management engine executing on the electronic device, based on information included in the first electronic content license, at least one content item of the one or more second content items to insert into at least one of the one or more content insertion slots within the first content item, wherein the selecting comprises:

evaluating the one or more second content items against the one or more criteria, and

evaluating one or more bids made in association with each of the one or more second content items against at least one objective function, wherein the selected at least one content item of the one or more second content items maximizes the objective function; and

rendering the first content item via a rendering application executing on the electronic device, wherein rendering the first content item comprises rendering the selected at least one content item within the at least one of the one or more content insertion slots within the first content item in connection with rendering the first content item by the electronic device

203.    The Accused Systems and Services perform the following method in determining which advertisements to circulate to customers who are using its streaming services.

204.    The interface of the user's electronic device receives the content to stream from Hulu and Hulu's electronic content license when streaming the content. Hulu's content producers, including advertisers and other third parties, must also

97

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

adhere to the guidelines set forth in applicable licenses and contracts when creating their content.

> This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

205.    The electronic content license and Hulu's guidelines for content producers require timeslots (i.e., "ad pods" and "ad breaks") within the streamed content for the advertisements to be inserted. The content can include "burned in advertising" (i.e., advertisements that are permanently baked into the content file) and "dynamic advertising," which are advertisements that are added in real-time as users stream their content.

> **6.3.2.2 Ad Pods**
>
> For an asset where advertising is burned into the video, Hulu requires metadata indicating the unique start/stop timecodes of each ad pod. In the example below, the asset delivered contains 4 ad pods:
>
> ```
> <App_Data App="MOD" Name="Ad_Pod" Value="00:02:18;05,00:05:18;05"/>
> <App_Data App="MOD" Name="Ad_Pod" Value="00:08:46;32,00:10:25;36"/>
> <App_Data App="MOD" Name="Ad_Pod" Value="00:15:16;56,00:16:51;00"/>
> <App_Data App="MOD" Name="Ad_Pod" Value="00:20:40;12,00:22:19;20"/>
> ```

*Id*. at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

> **6.3.2.3 Ad Breaks**
>
> As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.
>
> ```
> <App_Data App="MOD" Name="Ad_Breaks"
> Value="00:06:18;05,00:13:26;21,00:23:41;18"/>
> ```
>
> As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

*Id*. (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

206.   As noted above, when there is dynamic advertising—meaning there is room for advertisements that have not already been baked into the content file—Hulu determines the appropriate advertisements to display for customers.  This determination can be based on the customer's location, demographics (e.g., age group), and how well the advertisement has performed previously.

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

### 3. Use of Information We Collect

Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:

- providing the Hulu Services;
- contacting you, including for promotional purposes;
- customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
- identifying Content you share;
- customizing recommendations;
- conducting research;
- compiling aggregate data for internal and external business purposes;
- preventing potentially illegal or harmful activities, including fraud;
- protecting your and our rights;
- other uses in accordance with our Terms of Use; and
- any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.

Use of Payment Information. We use payment information, such as credit card numbers and billing ZIP code, to help provide the Hulu Services. For example, we use payment information to process payments from a subscriber (we use a third-party payment processor to do this), to retrieve account information for a subscriber, to determine whether a subscriber is eligible for promotions, and to detect abuse of the Hulu Services.

Use of Precise Location Data. In order to access certain Hulu Services from your mobile device, you may be required to share your device's precise location data (e.g., latitude and longitude) with us. In addition to providing you with certain Hulu Services, this also enables us to serve you Content related to your local area such as news and sports, depending on your subscription. This data may also be used to tailor advertising to you based on your location. To learn more about your choices with respect to our collection and use of precise location data, please see the information we have provided in Section 7 ("Your Choices, Including Opt-Out Options").

Use of Aggregate or De-Identified Information. In addition to the individual data use described in this Privacy Policy, we may aggregate information about you and other individuals together, or otherwise "de-identify" the information about you (which means that the information does not identify you personally).

We may use information in these forms for any legitimate business purpose, including for research and analysis, administration of the Hulu Services, advertising (e.g., improving our targeting efforts), and promotional purposes.

Ex. 12 at 2-3 (https://press.hulu.com/privacy-policy/).

207.   The network interface of the electronic device receives the second content items, such as advertisements.  The electronic device will then insert specific

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

content, such as advertisements, into designated time slots within the content that is being streamed.



6.3.2.3 Ad Breaks

As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.

```
<App_Data App="MOD" Name="Ad_Breaks"
Value="00:06:18;05,00:13:26;21,00:23:41;18"/>
```

As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

Ex. 17 at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

208.    Hulu considers the technical capabilities of third-party devices when deciding on the advertisements it will insert into the streamed content.  For example, Hulu requires "high-speed broadband, wireless or similar internet connection." It also states that the device must meet "system and compatibility requirements."



**3.8 Compatible Devices.** In order to access the Services, you will need to use a computer, mobile device, streaming media player, or other device that meets the system and compatibility requirements that we establish from time to time (each, a "Compatible Device"). Please visit our Help Center at hulu.com/help for a current list of Compatible Devices. Please note that Compatible Devices may vary by Service, and may be subject to additional terms. For example, certain devices may not be capable of streaming Content from the Live TV Service but may be capable of streaming other Content. Features and functionalities that we make available through the Services may also differ by Compatible Device and the terms of your subscription. If you access the Services using a Compatible Device, the third-party that offers that Compatible Device shall be a third-party beneficiary to these Terms, but is not a party to these Terms.

**3.9 Simultaneous Streams.** The number of simultaneous streams of Content that you can access varies by Service and may require device and account verification. Please visit our Help Center at hulu.com/help for the most up to date information on the number of simultaneous streams of Content that are allowed based on the terms of your Service. Where relevant to your Service, "in-home" streams are those that you stream through your Home internet service, and "out-of-home" streams are those that you stream through a connection to a cellular or Wi-Fi network outside of your Home.

**3.10 Internet Service and Data Usage.** In order to access the Services, you must have a high-speed broadband, wireless or similar internet connection from an internet service provider that meets certain technical specifications. Please note that multiple simultaneous streams, as well as HD and 4K Ultra HD Content, may require higher internet bandwidth. You are responsible for any costs associated with your internet service used to access the Services. Your use of the Services may count toward your data usage, depending on the terms of your agreement with your internet service provider.

Ex. 11 at 3-4 (https://www.hulu.com/terms-apr-13-2022).

209.    The electronic device receives a request to render the content to be streamed.

100

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

210.   The electronic device selects the advertisement to render.  This is done in accord with the electronic content licenses.  Hulu determines the appropriate advertisements to display for customers.  This determination can be based on the customer's location, demographics (e.g., age group), and how well the advertisement has performed previously.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

*Id*. at 3 ([https://www.hulu.com/terms-apr-13-2022](https://www.hulu.com/terms-apr-13-2022)).

To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 ([https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/](https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/)).

6.3.1.9 **External ID**

This denotes a Content Partner's internal, unique ID for this piece of content. This ID will be utilized for third party ad serving needs.  It will also be included in financial and reporting data for tracking purposes.

This is a string and is limited to 1000 characters.

`<App_Data App="MOD" Name="Ad_Content_ID" Value="123ABC456"/>`

Ex. 17 at 36 ([https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf](https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf)).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

211.   Hulu evaluates the potential advertisements (i.e., content items) against various criteria to determine which one to insert.  As an example, Hulu will generate advertisements that are targeted toward customers' interests and behaviors.

> **How are ads personalized to me?**
> There are a number of factors that affect the ads that you are seeing. What you're watching, where you're located, and what you've streamed previously can all help us personalize your ads so they're relevant to you.

Ex. 24 at 2 (https://help.hulu.com/article/hulu-ads-on-hulu).



Ex. 13 at 2 (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).

102

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

212.    The customer's device determines the advertisements to render in accord with the electronic content licenses.  For example, the device may be instructed to select advertisements that generate the most revenue.

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

> **6.3.1.9 External ID**
>
> This denotes a Content Partner's internal, unique ID for this piece of content. This ID will be utilized for third party ad serving needs.  It will also be included in financial and reporting data for tracking purposes.
>
> This is a string and is limited to 1000 characters.
>
> `<App_Data App="MOD" Name="Ad_Content_ID" Value="123ABC456"/>`

Ex. 17 at 36 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

213.    The electronic device then renders the content to be streamed.  This includes rendering the selected advertisements during the designated timeslots.



COMPLAINT FOR
PATENT INFRINGEMENT                                          CASE NO.

**DAI (Dynamic Ad Insertion):** Within the context of Hulu's services, the acronym DAI refers to Dynamic Ad Insertion and only occurs within Clean assets. In this experience, Hulu stores ad segment information as singular timecodes. Playback of content is paused at these times and a call to an ad server is made to present the user with advertising. When the advertising has completed, playback of the content resumes from the same timecode.

**DAR (Dynamic Ad Replacement):** Within the context of Hulu's services, the acronym DAR refers to Dynamic Ad Replacement and only occurs within Limited assets. In this experience, Hulu stores ad pod information as two timecodes, indicating the start and stop of the ad pod. Playback of content is paused at the start of the embedded ad pod and a call to an ad server is made to present the user with advertising. When the advertising has completed, playback of the content resumes at the stop timecode of the embedded ad pod.

**C Window Asset:** Within the context of Hulu's services, a C Window asset is one that contains burned-in advertising which has been guaranteed to be served to users over a period of time. For example, an asset in a "C3" window would contain advertising that was guaranteed to be shown to users on the day of original broadcast and for three days after. All C Window assets are Limited assets, but not all Limited assets are C Window assets.

*Id.* at 9 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

**6.3.2.3 Ad Breaks**

As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.

```
<App_Data App="MOD" Name="Ad_Breaks"
Value="00:06:18;05,00:13:26;21,00:23:41;18"/>
```

As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

*Id.* at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

214.    Thus, the Accused Systems and Services satisfy all elements of at least Claim 1 of the '912 Patent.

215.    Hulu's direct infringement of the '912 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

216.    Hulu's infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will

COMPLAINT FOR                                            CASE NO.
PATENT INFRINGEMENT

continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

217.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283 and 285 for Hulu's direct infringement of the '912 Patent.

**COUNT X**
**(Indirect Infringement of the '912 Patent)**

218.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

219.   As set forth above, Hulu has had knowledge of Innovation Technologies' patents and of its infringement of the '912 Patent since prior to the filing of this Complaint.

220.   As set forth above, the Accused Systems and Services directly infringe the '912 Patent.  Additionally, Hulu has actively, knowingly, and intentionally induced and continues to induce infringement of one or more claims of the '912 Patent pursuant to 35 U.S.C. § 271(b); and has contributorily infringed and continues to contributorily infringe one or more claims of the '912 Patent under 35 U.S.C. § 271(c).

221.   Hulu indirectly infringes the '912 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including customers, purchasers, shoppers, users, and developers, to perform one or more of the steps of the method

105

claims, either literally or under the doctrine of equivalents, of the '808 Patent, where all the steps of the method claims are performed by either Hulu, its customers, purchasers, shoppers, users, and developers, or some combination thereof. For example, Hulu requires customers to follow its digital rights management mechanisms and stream content according to the terms of applicable licenses and contracts. Hulu also requires content producers and developers, including advertisers and other third parties, to adhere to the guidelines set forth in applicable licenses and contracts.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

222. Thus, Hulu knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, shoppers, users, and developers, to infringe

106

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

by practicing, either themselves or in conjunction with Hulu, one or more method claims of the '912 Patent, including at least Claim 1.

223.   Hulu knowingly and actively aided and abetted the direct infringement of the '912 Patent by instructing and encouraging its customers, purchasers, shoppers, users, and developers to use its Accused Systems and Services, as shown above. Such instructions and encouragement include, but are not limited to, advising third parties to use the Accused Systems and Services in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Systems and Services in an infringing manner.  Further examples of this instruction and encouragement include, for example, trainings by Hulu either in-person or by instructional videos and material, for its content developers and customers as to how to utilize the Hulu application, and how to stream and create content by utilizing Hulu's applications, technology, or website.

224.   Hulu updates and maintains help and customer service sections on its website which cover in-depth aspects of operating the Accused Systems and Services in an infringing manner and instruct consumers and content developers on how to configure and use the Accused Systems and Services in an infringing manner. *See*, *e.g.*, Ex. 24 (https://help.hulu.com/article/hulu-ads-on-hulu); Ex. 17 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

107

225.   Hulu has knowingly and actively contributed to the direct infringement of the '912 Patent by its manufacture, use, offer to sell, sale and importation of the Accused Systems and Services together with its manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to meet the elements of the '912 Patent, as described above and incorporated by reference here.  Furthermore, Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers also directly infringe these claims jointly with Hulu, to the extent specific components are provided by those third parties.  To the extent Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers direct and control the methods in the claims, Hulu obtains benefits from the control of the system as a whole.  Hulu requires its customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers to put the methods described in the claims into service to obtain the benefit of Hulu's services.

226.   Hulu's indirect infringement of the '912 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

227.   Hulu's indirect infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

108

COMPLAINT FOR
PATENT INFRINGEMENT                              CASE NO.

228.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with U.S.C. §§ 283 and 285 for Hulu's indirect infringement.

## COUNT XI
### (Direct Infringement of the '070 Patent)

229.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

230.    In violation of 35 U.S.C. § 271(a), Hulu directly infringed and continues to infringe at least Claim 1 of the '070 Patent by making, using, importing, selling, and offering for sale in the United States the Accused System and Services.

231.   Hulu's acts of making, using, importing, selling, and/or offering for sale the Accused Systems and Services have been without permission, consent, authorization, or license of Innovation Technologies.

232.   Hulu's infringement includes the manufacture, use, sale, importation, and/or offer for sale of the Accused Systems and Services, which infringe on the '070 Patent because they satisfy each element of the claims of the '070 Patent, either literally, or under the doctrine of equivalents, or both.

233.   By way of example of Hulu's infringement of the '070 Patent, the Accused Systems and Services meet all limitations of at least Claim 1 of the '070 Patent, which recites:

109

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

A method for managing content rendered by an electronic device, the method comprising:

receiving, by a trusted proxy service providing a digital peer for the electronic device, a first electronic content license securely associated with a first content item, the first electronic content license identifying one or more content insertion slots within the first content item and specifying one or more criteria for selecting content items to insert into the one or more content insertion slots within the first content item;

receiving, by the trusted proxy service, one or more second content items, the one or more second content items being selected based, at least in part, on at least one capability of the electronic device;

selecting, using a digital rights management engine executed by the trusted proxy service, based on information included in the first electronic content license, at least one content item of the one or more second content items to insert into at least one of the one or more content insertion slots within the first content item, wherein the selecting comprises:

evaluating the one or more second content items against the one or more criteria, and

evaluating one or more bids made in association with each of the one or more second content items against at least one objective function, wherein the selected at least one content item of the one or more second content items maximizes the objective function; and

enabling rendering, by the trusted proxy service, of the selected at least one content item within the at least one of the one or more content insertion slots within the first content item by a rendering application executing on the electronic device.

234.   The Accused Systems and Services include a method for managing content rendered by an electronic device.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

235.   The user's electronic device receives, by a trusted proxy service, Hulu's electronic content license.  Users must adhere to these electronic content license guidelines when streaming content, such as movies, or television shows.  Hulu's content producers, including advertisers and other third parties, must adhere to the guidelines set forth in applicable licenses and contracts when creating their content.

> This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

236.   The content electronic license and Hulu's guidelines for content producers require timeslots (i.e., "ad pods" and "ad breaks") within the streamed content for the advertisements to be inserted.  The content can include "burned in advertising" (i.e., advertisements that are permanently baked into the content file) and "dynamic advertising," which are advertisements that are added in real-time as users stream their content.

> **6.3.2.2 Ad Pods**
>
> For an asset where advertising is burned into the video, Hulu requires metadata indicating the unique start/stop timecodes of each ad pod. In the example below, the asset delivered contains 4 ad pods:
>
> ```
> <App_Data App="MOD" Name="Ad_Pod" Value="00:02:18;05,00:05:18;05"/>
> <App_Data App="MOD" Name="Ad_Pod" Value="00:08:46;32,00:10:25;36"/>
> <App_Data App="MOD" Name="Ad_Pod" Value="00:15:16;56,00:16:51;00"/>
> <App_Data App="MOD" Name="Ad_Pod" Value="00:20:40;12,00:22:19;20"/>
> ```

*Id*. at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

111

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

> **6.3.2.3 Ad Breaks**
>
> As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.
>
> `<App_Data App="MOD" Name="Ad_Breaks"`
> `Value="00:06:18;05,00:13:26;21,00:23:41;18"/>`
>
> As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

*Id.* (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

237. As noted above, when there is dynamic advertising—meaning there is room for advertisements that have not already been baked into the content file—Hulu determines the appropriate advertisements to display for customers. This determination can be based on the customer's location, demographics (e.g., age group), and how well the advertisement has performed previously.

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

COMPLAINT FOR
PATENT INFRINGEMENT                    CASE NO.

**3. Use of Information We Collect**

Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:

- providing the Hulu Services;
- contacting you, including for promotional purposes;
- customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
- identifying Content you share;
- customizing recommendations;
- conducting research;
- compiling aggregate data for internal and external business purposes;
- preventing potentially illegal or harmful activities, including fraud;
- protecting your and our rights;
- other uses in accordance with our Terms of Use, and
- any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.

Use of Payment Information. We use payment information, such as credit card numbers and billing ZIP code, to help provide the Hulu Services. For example, we use payment information to process payments from a subscriber (we use a third-party payment processor to do this), to retrieve account information for a subscriber, to determine whether a subscriber is eligible for promotions, and to detect abuse of the Hulu Services.

Use of Precise Location Data. In order to access certain Hulu Services from your mobile device, you may be required to share your device's precise location data (e.g., latitude and longitude) with us. In addition to providing you with certain Hulu Services, this also enables us to serve you Content related to your local area such as news and sports, depending on your subscription. This data may also be used to tailor advertising to you based on your location. To learn more about your choices with respect to our collection and use of precise location data, please see the information we have provided in Section 7 ("Your Choices, Including Opt-Out Options").

Use of Aggregate or De-Identified Information. In addition to the individual data use described in this Privacy Policy, we may aggregate information about you and other individuals together, or otherwise "de-identify" the information about you (which means that the information does not identify you personally).

We may use information in these forms for any legitimate business purpose, including for research and analysis, administration of the Hulu Services, advertising (e.g., improving our targeting efforts), and promotional purposes.

Ex. 12 at 2-3 (https://press.hulu.com/privacy-policy/).

238.   The electronic device receives through the trusted proxy service the second content items, such as advertisements.  The electronic device will then insert specific content, such as advertisements, into designated time slots within the content that is being streamed.

**6.3.2.3 Ad Breaks**

As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.

```
<App_Data App="MOD" Name="Ad_Breaks"
Value="00:06:18;05,00:13:26;21,00:23:41;18"/>
```

As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

Ex. 17 at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

239.   Hulu considers the technical capabilities of third-party devices when deciding on the advertisements it will insert into the streamed content.  For example,

113

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

Hulu requires "high-speed broadband, wireless or similar internet connection." It also states that the device must meet "system and compatibility requirements."

**3.8 Compatible Devices.** In order to access the Services, you will need to use a computer, mobile device, streaming media player, or other device that meets the system and compatibility requirements that we establish from time to time (each, a "Compatible Device"). Please visit our Help Center at hulu.com/help for a current list of Compatible Devices. Please note that Compatible Devices may vary by Service, and may be subject to additional terms. For example, certain devices may not be capable of streaming Content from the Live TV Service but may be capable of streaming other Content. Features and functionalities that we make available through the Services may also differ by Compatible Device and the terms of your subscription. If you access the Services using a Compatible Device, the third-party that offers that Compatible Device shall be a third-party beneficiary to these Terms, but is not a party to these Terms.

**3.9 Simultaneous Streams.** The number of simultaneous streams of Content that you can access varies by Service and may require device and account verification. Please visit our Help Center at hulu.com/help for the most up to date information on the number of simultaneous streams of Content that are allowed based on the terms of your Service. Where relevant to your Service, "in-home" streams are those that you stream through your Home internet service, and "out-of-home" streams are those that you stream through a connection to a cellular or Wi-Fi network outside of your Home.

**3.10 Internet Service and Data Usage.** In order to access the Services, you must have a high-speed broadband, wireless or similar internet connection from an internet service provider that meets certain technical specifications. Please note that multiple simultaneous streams, as well as HD and 4K Ultra HD Content, may require higher internet bandwidth. You are responsible for any costs associated with your internet service used to access the Services. Your use of the Services may count toward your data usage, depending on the terms of your agreement with your internet service provider.

Ex. 11 at 3-4 (https://www.hulu.com/terms-apr-13-2022).

240.   The electronic device selects, using Hulu's programming executed by the trusted proxy service, the advertisement to render.  This is done in accord with the electronic content licenses.  Hulu determines the appropriate advertisements to display for customers.  This determination can be based on the customer's location, demographics (e.g., age group), and how well the advertisement has performed previously.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

*Id.* at 3 (https://www.hulu.com/terms-apr-13-2022).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 (https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/).

> **6.3.1.9 External ID**
>
> This denotes a Content Partner's internal, unique ID for this piece of content. This ID will be utilized for third party ad serving needs.  It will also be included in financial and reporting data for tracking purposes.
>
> This is a string and is limited to 1000 characters.
>
> `<App_Data App="MOD" Name="Ad_Content_ID" Value="123ABC456"/>`

Ex. 17 at 36 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

241.   Hulu evaluates the potential advertisements (i.e., content items) against various criteria to determine which one to insert.  As an example, Hulu will generate advertisements that are targeted toward customers' interests and behaviors.

> **How are ads personalized to me?**
>
> There are a number of factors that affect the ads that you are seeing. What you're watching, where you're located, and what you've streamed previously can all help us personalize your ads so they're relevant to you.

Ex. 24 at 2 (https://help.hulu.com/article/hulu-ads-on-hulu).

COMPLAINT FOR                                        CASE NO.
PATENT INFRINGEMENT

- **User profile builder:** When a user first comes into the recommendation system, we will first build a profile for them. The profile includes the user's historical behaviors and topics, and these are generated from their old behaviors. Users can have many different types of behaviors. For example, they can watch videos, add shows to favorites, search for videos and vote on videos and shows. All these behaviors are considered by our system and, after extracting all these behaviors, we use a topic model which is trained offline to generate users' preference on topics.
- **Recommendation Core:** After generating the list of user's historical preferences on shows and topics, we put all of those similar shows into raw recommendations.
- **Filtering:** For some pretty obvious reasons, raw recommendation results cannot be presented to users directly. We need to filter out shows the user has already seen or engaged with, so we can increase the recommendations shows a little more precise.
- **Ranking:** The ranking module will re-rank raw recommendations to make them better fit users preferences. First, we'll make recommendation more diverse. Then we'll increase novelty of recommendations so that users will find shows they like, but have never seen before.
- **Explanation:** Explanation is one of the most important components of every recommendation system. The explanation module generates some reasoning for every recommendation result using the user's historical behaviors. For example, we will recommend 'American Dad' to a user who had previously watched 'Family Guy.' The explanation will say, "We recommend 'American Dad' to you because you have watched 'Family Guy'".

Figure 1 : Architecture for Hulu

Ex. 13 at 2 ([https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html](https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html)).

242.   The customer's device determines the advertisements to render in accord with various criteria outlined by the electronic content licenses.  For example, the device may be instructed to select advertisements that generate the most revenue.

> To make ads more relevant and personalized, Hulu is testing dynamic ad insertion, which serves different ads to different audiences based on their characteristics. Naylor declined to provide more detail about the product in its early stages, but it's testing with a select group of networks.

Ex. 16 at 2 ([https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/](https://www.adexchanger.com/platforms/hulu-launches-dynamic-ad-insertion-hits-20-million-subscribers/)).

116

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

> **6.3.1.9 External ID**
>
> This denotes a Content Partner's internal, unique ID for this piece of content. This ID will be utilized for third party ad serving needs. It will also be included in financial and reporting data for tracking purposes.
>
> This is a string and is limited to 1000 characters.
>
> `<App_Data App="MOD" Name="Ad_Content_ID" Value="123ABC456"/>`

Ex. 17 at 36 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

243.   Once the advertisement is selected, the customer's device can pause the streamed content, play the selected advertisement, and resume playing the streamed content when the advertisement concludes.

> **DAI (Dynamic Ad Insertion)**: Within the context of Hulu's services, the acronym DAI refers to Dynamic Ad Insertion and only occurs within Clean assets. In this experience, Hulu stores ad segment information as singular timecodes. Playback of content is paused at these times and a call to an ad server is made to present the user with advertising. When the advertising has completed, playback of the content resumes from the same timecode.
>
> **DAR (Dynamic Ad Replacement):** Within the context of Hulu's services, the acronym DAR refers to Dynamic Ad Replacement and only occurs within Limited assets. In this experience, Hulu stores ad pod information as two timecodes, indicating the start and stop of the ad pod. Playback of content is paused at the start of the embedded ad pod and a call to an ad server is made to present the user with advertising. When the advertising has completed, playback of the content resumes at the stop timecode of the embedded ad pod.
>
> **C Window Asset:** Within the context of Hulu's services, a C Window asset is one that contains burned-in advertising which has been guaranteed to be served to users over a period of time. For example, an asset in a "C3" window would contain advertising that was guaranteed to be shown to users on the day of original broadcast and for three days after. All C Window assets are Limited assets, but not all Limited assets are C Window assets.

*Id*. at 9 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

> **6.3.2.3 Ad Breaks**
>
> As opposed to Ad Pods, Ad Break information informs Hulu of where there is no longer any burned in advertising, but where dynamic advertising should now be served. It is sent as a single tag with a string of timecode values inside.
>
> `<App_Data App="MOD" Name="Ad_Breaks"`
> `Value="00:06:18;05,00:13:26;21,00:23:41;18"/>`
>
> As noted in the Ad Pods section, a single asset may contain Ad Pods **or** Ad Breaks, but not both.

*Id*. at 37 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

117

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

244.   Thus, the Accused Systems and Services satisfy all elements of at least Claim 1 of the '070 Patent.

245.   Hulu's direct infringement of the '070 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

246.   Hulu's infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

247.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283 and 285 for Hulu's direct infringement of the '070 Patent.

## COUNT XII
### (Indirect Infringement of the '070 Patent)

248.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

249.   As set forth above, Hulu has had knowledge of Innovation Technologies' patents and of its infringement of the '070 Patent since prior to the filing of this Complaint.

250.   As set forth above, the Accused Systems and Services directly infringe the '070 Patent. Additionally, Hulu has actively, knowingly, and intentionally

118

COMPLAINT FOR
PATENT INFRINGEMENT                    CASE NO.

induced and continues to induce infringement of one or more claims of the '070 Patent pursuant to 35 U.S.C. § 271(b); and has contributorily infringed and continues to contributorily infringe one or more claims of the '070 Patent under 35 U.S.C. § 271(c).

251.    Hulu indirectly infringes the '070 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including customers, purchasers, shoppers, users, and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '070 Patent, where all the steps of the method claims are performed by either Hulu, its customers, purchasers, shoppers, users, and developers, or some combination thereof.  For example, Hulu requires customers to follow its digital rights management mechanisms and stream content according to the terms of applicable licenses and contracts.  Hulu also requires content producers and developers, including advertisers and other third parties, to adhere to the guidelines set forth in applicable licenses and contracts.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

252. Thus, Hulu knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, shoppers, users, and developers, to infringe by practicing, either themselves or in conjunction with Hulu, one or more method claims of the '070 Patent, including at least Claim 1.

253. Hulu knowingly and actively aided and abetted the direct infringement of the '070 Patent by instructing and encouraging its customers, purchasers, shoppers, users, and developers to use its Accused Systems and Services, as shown above. Such instructions and encouragement include, but are not limited to, advising third parties to use the Accused Systems and Services in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Systems and Services in an infringing manner. Further examples of this instruction and encouragement include, for example, trainings by Hulu either in-person or by instructional videos and material, for its content developers and customers as to how to utilize the Hulu application, and how to stream and create content by utilizing Hulu's applications, technology, or website.

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

254.   Hulu updates and maintains help and customer service sections on its website which cover in-depth aspects of operating the Accused Systems and Services in an infringing manner and instruct consumers and content developers on how to configure and use the Accused Systems and Services in an infringing manner. *See*, *e.g.*, Ex. 24 (https://help.hulu.com/article/hulu-ads-on-hulu); Ex. 17 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

255.   Hulu has knowingly and actively contributed to the direct infringement of the '070 Patent by its manufacture, use, offer to sell, sale and importation of the Accused Systems and Services together with its manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to meet the elements of the '070 Patent, as described above and incorporated by reference here.  Furthermore, Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers also directly infringe these claims jointly with Hulu, to the extent specific components are provided by those third parties.  To the extent Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers direct and control the methods in the claims, Hulu obtains benefits from the control of the system as a whole.  Hulu requires its customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers to put the methods described in the claims into service to obtain the benefit of Hulu's services.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

256.    Hulu's indirect infringement of the '070 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

257.    Hulu's indirect infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

258.    Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with U.S.C. §§ 283 and 285 for Hulu's indirect infringement.

## COUNT XIII
### (Direct Infringement of the '157 Patent)

259.    Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

260.    In violation of 35 U.S.C. § 271(a), Hulu directly infringed and continues to infringe at least Claim 1 of the '157 Patent by making, using, importing, selling, and offering for sale in the United States the Accused System and Services.

261.    Hulu's acts of making, using, importing, selling, and/or offering for sale the Accused Systems and Services have been without permission, consent, authorization, or license of Innovation Technologies.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

262.   Hulu's infringement includes the manufacture, use, sale, importation, and/or offer for sale of the Accused Systems and Services, which infringe on the '157 Patent because they satisfy each element of the claims of the '157 Patent, either literally, or under the doctrine of equivalents, or both.

263.   By way of example of Hulu's infringement of the '157 Patent, the Accused Systems and Services meet all limitations of at least Claim 1 of the '157 Patent, which recites:

> A method performed by a trusted system comprising a processor and a non-transitory computer-readable storage medium storing instructions that, when executed by the processor, cause the trusted system to perform the method, the method comprising:
>
>> receiving, at an interface of the trusted system, from a device, personal information relating to a user of the device, the personal information being provided by a plurality of trusted components included in a plurality of applications executing on the device;
>>
>> generating, based on the personal information, a person ontology graph relating to the user, the personal ontology graph comprising first level interest information relating to the user derived from at least one or more inferences based on the personal information, wherein generating the personal ontology graph further comprises:
>>
>>> accessing an interest taxonomy database;
>>>
>>> identifying one or more second level interests included in the interest taxonomy database associated with the first level interest information, and
>>>
>>> including the one or more second level interests in the personal ontology graph;

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

receiving, by the interface, a plurality of content items;

selecting, based at least in part on the first level interest information and the one or more second level interests included in the personal ontology graph, a content item of the plurality of content items; and

transmitting, from the interface, the selected content item to the user device for rendering by the device.

264.    The Accused Systems and Services have a trusted system consisting of a storage medium and processor that performs the following:

265.    Hulu's trusted system has an interface for receiving user data.  Hulu collects customers' personal information, including their email addresses, birth dates, genders, and zip codes.  Moreover, when customers create a Hulu profile, Hulu stores the information that they provide.



Ex. 14 at 3 (https://www.lifewire.com/add-profile-to-hulu-5212283).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

> Account and Profile Data from Third-Party Services. If you choose to log-in, access or otherwise connect to the Hulu Services, or contact Hulu, through a third-party service (such as Facebook), we may, for example, collect your user ID and user name associated with that service, as well as any information you make public using that service. We may also collect information you have authorized the service to share with us (such as your user ID, billing information, public profile information, email address, birthday, friends list, pages you have "liked" and other account and profile data).

Ex. 12 at 2 (https://press.hulu.com/privacy-policy/).

> **2. Information We Collect**
> Hulu may collect the following information from or about you:
>
> Information You Provide To Us. We collect information you provide to us. For instance, when you register to use the Hulu Services, we may collect your name, email address, birth date, gender, credit card information, billing address, ZIP code, and other information. In addition, Hulu may collect information you provide to us when you respond to surveys, set your preferences, contact Hulu through customer service or by other means, or participate in promotions that Hulu may offer from time to time. Hulu also allows multiple profiles to be set up under one account, so we may collect information you provide to us if you create a profile.

> Usage and Log Data. We collect information when you use the Hulu Services or view Hulu advertising outside of the Hulu Services. Examples of this information may include your IP address, device, browser and software characteristics (such as type and operating system), location (which may include precise location data), activity on the Hulu Services including information about the videos you view on Hulu (e.g., show titles and episode names), page views, ad data, referral URLs, network state, device identifiers or other unique identifiers such as advertising identifiers (e.g., "ad-ID" or "IDFA") and identifiers associated with browser cookies (see our description of "Cookies and Local Storage" below), and carrier information.

*Id*. at 1 (https://press.hulu.com/privacy-policy/).

266.   Hulu generates a personal ontology graph and provides targeted advertisements to customers based on their personal information.  Hulu states that they "build a profile" for users that "includes the user's historical behaviors and topics, and . . . use a topic model . . . to generate users' preference on topics."

> 1. **User profile builder:** When a user first comes into the recommendation system, we will first build a profile for them. The profile includes the user's historical behaviors and topics, and these are generated from their old behaviors. Users can have many different types of behaviors. For example, they can watch videos, add shows to favorites, search for videos and vote on videos and shows. All these behaviors are all considered by our system and, after extracting all these behaviors, we use a topic model which is trained offline to generate users' preference on topics.

Ex. 13 at 2 (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).

COMPLAINT FOR                                      CASE NO.
PATENT INFRINGEMENT

**3. Use of Information We Collect**

Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:

- providing the Hulu Services;
- contacting you, including for promotional purposes;
- customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
- identifying Content you share;
- customizing recommendations;
- conducting research;
- compiling aggregate data for internal and external business purposes;
- preventing potentially illegal or harmful activities, including fraud;
- protecting your and our rights;
- other uses in accordance with our Terms of Use; and
- any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.

Use of Payment Information. We use payment information, such as credit card numbers and billing ZIP code, to help provide the Hulu Services. For example, we use payment information to process payments from a subscriber (we use a third-party payment processor to do this), to retrieve account information for a subscriber, to determine whether a subscriber is eligible for promotions, and to detect abuse of the Hulu Services.

Use of Precise Location Data. In order to access certain Hulu Services from your mobile device, you may be required to share your device's precise location data (e.g., latitude and longitude) with us. In addition to providing you with certain Hulu Services, this also enables us to serve you Content related to your local area such as news and sports, depending on your subscription. This data may also be used to tailor advertising to you based on your location. To learn more about your choices with respect to our collection and use of precise location data, please see the information we have provided in Section 7 ("Your Choices, Including Opt-Out Options").

Use of Aggregate or De-Identified Information. In addition to the individual data use described in this Privacy Policy, we may aggregate information about you and other individuals together, or otherwise "de-identify" the information about you (which means that the information does not identify you personally).

We may use information in these forms for any legitimate business purpose, including for research and analysis, administration of the Hulu Services, advertising (e.g., improving our targeting efforts), and promotional purposes.

Ex. 12 at 2-3 (https://press.hulu.com/privacy-policy/).

267.   Hulu's architecture contains an interest taxonomy database that stores users' behavior and demographic information.  As the YouTube videos below show, Hulu may collect information related to the user's geographic location, gender, and age.

**Off-line Architecture**

In the above on-line architecture, some components rely on offline resources, such as the topic model, related model, feedback model, etc. The off-line system is also an important part of our recommendation system. Our off-line system has these main components:

1. Data Center: The data center contains all user behavior data in Hulu. Some of them are stored in Hadoop clusters and some of them are stored in a relational database.

Ex. 13 at 2 (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).

126

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT



*Id*. at 3 (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).



https://www.youtube.com/watch?v=IraVELyEgz0&t=60s

127

https://www.youtube.com/watch?v=IraVELyEgz0&t=60s

268.   Hulu's system identifies one or more of users' second level interests that are associated with the first level interest information.  This may include their interests in specific sports, restaurants, and other products, for example.



https://www.youtube.com/watch?v=IraVELyEgz0&t=60s

269.   Hulu considers its user's second level interests when determining its content recommendations, including advertisements.  Specifically, Hulu has "Related Tables" that are based on recommendation algorithms, such as collaborative filtering ("CF").  Collaborative filtering "predict[s] user preferences by analyzing their behaviors."

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

Figure 2 : Architecture for Hulu

Ex. 13 at 3 (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).

1. **Data Center:** The data center contains all user behavior data in Hulu. Some of them are stored in Hadoop clusters and some of them are stored in a relational database.
2. **Related Table Generator:** The related table is an important resource for on-line recommendation. We use two main types of related table: one that's based on collaborative filtering (which we'll call CF), and another based on content. In CF, show A and show B will have high similarity if users who like show A also like show B. With content filtering, we use content information including title, description, channel, company, actor/actress, and tags.
3. **Topic Model:** A topic is represented by a group of shows that have similar content. Topics are thus larger in scope than shows, but they're still smaller than channels. Our topics are learned by LDA, which is a popular topic model in machine learning.

*Id.* (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).

### Architecture

There are many different types of recommendation algorithms, and perhaps the most famous algorithm is collaborative filtering (CF). CF relies on user behavior data, and its main idea is to predict user preferences by analyzing their behaviors. There are two types of CF methods: user-based CF (UserCF) and item-based CF (ItemCF). UserCF assumes that a user will prefer items which are liked by other users who have similar preferences to that user. ItemCF assumes that a user will prefer items similar to the assets he or she preferred previously. ItemCF is widely used by many others (for example, Amazon and Netflix), as it has two main

*Id.* at 1-2 (https://www.cnblogs.com/zhenjing/articles/hulu-recommendation-system.html).

270.    Hulu receives a plurality of content items to consider, as noted in its "Related Table Generator" and "Topic Model."

129

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

1. **Data Center:** The data center contains all user behavior data in Hulu. Some of them are stored in Hadoop clusters and some of them are stored in a relational database.
2. **Related Table Generator:** The related table is an important resource for on-line recommendation. We use two main types of related table: one that's based on collaborative filtering (which we'll call CF), and another based on content. In CF, show A and show B will have high similarity if users who like show A also like show B. With content filtering, we use content information including title, description, channel, company, actor/actress, and tags.
3. **Topic Model:** A topic is represented by a group of shows that have similar content. Topics are thus larger in scope than shows, but they're still smaller than channels. Our topics are learned by LDA, which is a popular topic model in machine learning.

Ex. 15 at 2 (https://web.archive.org/web/20151006161004/http://tech.hulu.com/blog/2011/09/19/recommendation-system/).

271. Based on the interest information collected, Hulu's can select content items, such as advertisements and shows, that are tailored to customers' personal interests. This is accomplished with Hulu's recommendation system and ranking module, which will rank recommendations based on its fit with customers' preferences.

1. **User profile builder:** When a user first comes into the recommendation system, we will first build a profile for them. The profile includes the user's historical behaviors and topics, and these are generated from their old behaviors. Users can have many different types of behaviors. For example, they can watch videos, add shows to favorites, search for videos and vote on videos and shows. All these behaviors are all considered by our system and, after extracting all these behaviors, we use a topic model which is trained offline to generate users' preference on topics.
2. **Recommendation Core:** After generating the list of user's historical preferences on shows and topics, we put all of those similar shows into raw recommendations.
3. **Filtering:** For some pretty obvious reasons, raw recommendation results cannot be presented to users directly. We need to filter out shows the user has already seen or engaged with, so we can increase the recommendations shows a little more precise.
4. **Ranking:** The ranking module will re-rank raw recommendations to make them better fit users preferences. First, we'll make recommendation more diverse. Then we'll increase novelty of recommendations so that users will find shows they like, but have never seen before.
5. **Explanation:** Explanation is one of the most important components of every recommendation system. The explanation module generates some reasoning for every recommendation result using the user's historical behaviors. For example, we will recommend "American Dad" to a user who had previously watched "Family Guy." The explanation will say, "We recommend 'American Dad' to you because you have watched 'Family Guy'".

*Id.* (https://web.archive.org/web/20151006161004/http://tech.hulu.com/blog/2011/09/19/recommendation-system/).

130

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

272.    Hulu then transmits the selected content tailored to customers' personal information to the user's device for it to be rendered.



273.    Thus, the Accused Systems and Services satisfy all elements of at least Claim 1 of the '157 Patent.

274.    Hulu's direct infringement of the '157 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

275.    Hulu's infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

276.    Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283 and 285 for Hulu's direct infringement of the '157 Patent.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

## COUNT XIV
### (Indirect Infringement of the '157 Patent)

277.  Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

278.  As set forth above, Hulu has had knowledge of Innovation Technologies' patents and of its infringement of the '157 Patent since prior to the filing of this Complaint.

279.  As set forth above, the Accused Systems and Services directly infringe the '157 Patent.  Additionally, Hulu has actively, knowingly, and intentionally induced and continues to induce infringement of one or more claims of the '157 Patent pursuant to 35 U.S.C. § 271(b); and has contributorily infringed and continues to contributorily infringe one or more claims of the '157 Patent under 35 U.S.C. § 271(c).

280.  Hulu indirectly infringes the '157 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including customers, purchasers, shoppers, users, and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '157 Patent, where all the steps of the method claims are performed by either Hulu, its customers, purchasers, shoppers, users, and developers, or some combination thereof.  For example, Hulu requires customers to follow its digital rights management mechanisms and stream content according to the terms of applicable licenses and

132

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

contracts.  Hulu also requires content producers and developers, including advertisers and other third parties, to adhere to the guidelines set forth in applicable licenses and contracts.

**3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

281.   Thus, Hulu knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, shoppers, users, and developers, to infringe by practicing, either themselves or in conjunction with Hulu, one or more method claims of the '157 Patent, including at least Claim 1.

282.   Hulu knowingly and actively aided and abetted the direct infringement of the '157 Patent by instructing and encouraging its customers, purchasers, shoppers, users, and developers to use its Accused Systems and Services, as shown above. Such instructions and encouragement include, but are not limited to, advising third parties to use the Accused Systems and Services in an infringing manner, and

133

COMPLAINT FOR                                CASE NO.
PATENT INFRINGEMENT

distributing guidelines and instructions to third parties on how to use the Accused Systems and Services in an infringing manner.  Further examples of this instruction and encouragement include, for example, trainings by Hulu either in-person or by instructional videos and material, for its content developers and customers as to how to utilize the Hulu application, and how to stream and create content by utilizing Hulu's applications, technology, or website.

283.   Hulu updates and maintains help and customer service sections on its website which cover in-depth aspects of operating the Accused Systems and Services in an infringing manner and instruct consumers and content developers on how to configure and use the Accused Systems and Services in an infringing manner. *See*, *e.g.*, Ex. 24 (https://help.hulu.com/article/hulu-ads-on-hulu); Ex. 17 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

284.   Hulu has knowingly and actively contributed to the direct infringement of the '157 Patent by its manufacture, use, offer to sell, sale and importation of the Accused Systems and Services together with its manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to meet the elements of the '157 Patent, as described above and incorporated by reference here.  Furthermore, Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers also directly infringe these claims jointly with Hulu, to the extent specific components are provided by those third parties.  To the extent Hulu's

134

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers direct and control the methods in the claims, Hulu obtains benefits from the control of the system as a whole.  Hulu requires its customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers to put the methods described in the claims into service to obtain the benefit of Hulu's services.

285.   Hulu's indirect infringement of the '157 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

286.   Hulu's indirect infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

287.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with U.S.C. §§ 283 and 285 for Hulu's indirect infringement.

## COUNT XV
### (Direct Infringement of the '003 Patent)

288.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

135

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

289.   In violation of 35 U.S.C. § 271(a), Hulu directly infringed and continues to infringe at least Claim 1 of the '003 Patent by making, using, importing, selling, and offering for sale in the United States the Accused System and Services.

290.   Hulu's acts of making, using, importing, selling, and/or offering for sale the Accused Systems and Services have been without permission, consent, authorization, or license of Innovation Technologies.

291.   Hulu's infringement includes the manufacture, use, sale, importation, and/or offer for sale of the Accused Systems and Services, which infringe on the '003 Patent because they satisfy each element of the claims of the '003 Patent, either literally, or under the doctrine of equivalents, or both.

292.   By way of example of Hulu's infringement of the '003 Patent, the Accused Systems and Services meet all limitations of at least Claim 1 of the '003 Patent, which recites:

> A method for facilitating rendering of one or more first content items in connection with a second content item on a user device performed by a content service system comprising a processor and a non-transitory computer-readable medium storing instructions that, when executed by the processor, cause the processor to perform the method, the method comprising:
>
> identifying a segment associated with a user of the user device, the segment comprising at least one of a user demographic and a user interest, the segment being determined based, at least in part, on user information received from the user device;
>
> determining that a content map of a stored plurality of content maps is associated with the identified segment, the content map

136

comprising one or more specified content break locations for rendering content within other content;

mapping the second content item in accordance with the content map associated with the identified segment;

generating a content stream, the content stream comprising the one or more first content items presented within the second content item in accordance with the mapping of the second content item;

transmitting the content stream to the user device;

generating a first test content map and a second test content map;

receiving first test response information corresponding to the first test content map from a first group of test user devices associated with the segment associated with the user of the user device;

receiving second test response information corresponding to the second test content map from a second group of test user devices associated with the segment associated with the user of the user device;

comparing the first test response information and the second test response information with at least one objective content mapping criteria; and

generating the content map based, at least in part, on the comparison.

293.    The Accused Systems and Services have a system consisting of a storage medium and processor that performs the following actions.

294.    Hulu collects various personal information regarding its customers. The '003 patent defines information associated with a user as "a segment associated with

COMPLAINT FOR                                CASE NO.
PATENT INFRINGEMENT

a user." '003 Patent at 2:3-15.  Hulu collects customers' personal information, including their email addresses, birth dates, genders, and zip codes.  Moreover, when customers create a Hulu profile, Hulu stores the information that they provide.  Hulu can store this information and customize customers' experiences based on their preferences.

**2. Information We Collect**
Hulu may collect the following information from or about you:

Information You Provide To Us. We collect information you provide to us. For instance, when you register to use the Hulu Services, we may collect your name, email address, birth date, gender, credit card information, billing address, ZIP code, and other information. In addition, Hulu may collect information you provide to us when you respond to surveys, set your preferences, contact Hulu through customer service or by other means, or participate in promotions that Hulu may offer from time to time. Hulu also allows multiple profiles to be set up under one account, so we may collect information you provide to us if you create a profile.

Ex. 12 at 1 (https://press.hulu.com/privacy-policy/).

Usage and Log Data. We collect information when you use the Hulu Services or view Hulu advertising outside of the Hulu Services. Examples of this information may include your IP address, device, browser and software characteristics (such as type and operating system), location (which may include precise location data), activity on the Hulu Services including information about the videos you view on Hulu (e.g., show titles and episode names), page views, ad data, referral URLs, network state, device identifiers or other unique identifiers such as advertising identifiers (e.g., "ad-ID" or "IDFA") and identifiers associated with browser cookies (see our description of "Cookies and Local Storage" below), and carrier information.

*Id.* (https://press.hulu.com/privacy-policy/).

Account and Profile Data from Third-Party Services. If you choose to log-in, access or otherwise connect to the Hulu Services, or contact Hulu, through a third-party service (such as Facebook), we may, for example, collect your user ID and user name associated with that service, as well as any information you make public using that service. We may also collect information you have authorized the service to share with us (such as your user ID, billing information, public profile information, email address, birthday, friends list, pages you have "liked" and other account and profile data).

*Id.* at 2 (https://press.hulu.com/privacy-policy/).

    295.   Hulu generates a content map that is associated with and is tailored to its users, based on their demographic and personal information.  Indeed, Hulu expressly states that it associates "unique advertising identifiers" with its users.  The content map comprises specific content break locations.

138

COMPLAINT FOR                                        CASE NO.
PATENT INFRINGEMENT

> Usage and Log Data. We collect information when you use the Hulu Services or view Hulu advertising outside of the Hulu Services. Examples of this information may include your IP address, device, browser and software characteristics (such as type and operating system), location (which may include precise location data), activity on the Hulu Services including information about the videos you view on Hulu (e.g., show titles and episode names), page views, ad data, referral URLs, network state, device identifiers or other unique identifiers such as advertising identifiers (e.g., "ad-ID" or "IDFA") and identifiers associated with browser cookies (see our description of "Cookies and Local Storage" below), and carrier information.

*Id.* at 1 ([https://press.hulu.com/privacy-policy/](https://press.hulu.com/privacy-policy/)).

> • On your mobile device, you may also go to your device settings and select "Limit Ad Tracking" (for iOS devices) or "Opt-Out of Interest-Based Ads" (for Android devices), which will allow you to limit our use of information collected from or about your mobile device (such as precise location data) for the purposes of serving online behavioral advertising to you.
> • Opt-Out from Collection of Precise Location Data from Your Mobile Device
> • You can opt out of our collection of precise location data from your mobile device in your device settings, for example, by disabling "Location Services" for the Hulu application in your iOS device's settings. Please note that by opting out of our collection of precise location data, your access to the Hulu Services on your mobile device may be limited depending on your subscription.

*Id.* at 6 ([https://press.hulu.com/privacy-policy/](https://press.hulu.com/privacy-policy/)).

> • Your Browsers and Devices. We may work with service providers who use information collected from or about you to help us identify the browsers and devices you use for various purposes, including for targeted advertising, analytics, attribution, and measurement purposes. For example, these service providers (along with Hulu) may use your activity on one browser or device to serve you with more tailored advertising on another browser or device. In connection with your use of browsers and devices, please note that certain opt out choices you have as described in Section 7 ("Your Choices, Including Opt-Out Options") apply only to the specific browser or device from which you opt out.
>
> Advertisers and Advertising-Related Service Providers. We may share the information collected from or about you in encrypted, aggregated, or de-identified forms with advertisers and service providers that perform advertising-related services for us and our business partners in order to tailor advertisements, measure and improve advertising effectiveness, and enable other enhancements. This information includes your use of the Hulu Services, websites you visited, advertisements you viewed, and your other activities online.
>
> Audience Measurement Providers. Our business partners, such as content programmers, as well as our advertisers, seek to measure the performance of their creative material across many platforms, including the Hulu Services. Accordingly, Hulu may permit the use of third-party measurement software that enables third parties (such as Nielsen) to include your viewing on the Hulu Services in calculating measurement statistics such as TV Ratings. To learn more about your choices with respect to Nielsen measurement software, please see the information we have provided in Section 7 ("Your Choices, Including Opt-Out Options").

*Id.* at 3-4 ([https://press.hulu.com/privacy-policy/](https://press.hulu.com/privacy-policy/)).

296.    Hulu also generates a second content, such as a video, with content maps that are tailored to each user. For example, advertisements can be targeted based on customers' location, gender, age, interests, and employment.

> We may ask for your consent to Hulu sharing information about the videos you view on Hulu (e.g., show titles and episode names) ("Viewing Information") together with your personal information that we may collect (e.g., name, address, email address, and precise location data) with our content programmers, service providers, and other third parties set forth in Section 4 ("Sharing Information with Third Parties"). This information may help Hulu or these third parties personalize your experience by providing you with more tailored content, features, and ads on Hulu as well as on other platforms and services. Please note that we request consent on a per-profile basis (i.e., for each profile) and therefore the consent provided for one

*Id.* at 4 ([https://press.hulu.com/privacy-policy/](https://press.hulu.com/privacy-policy/)).

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

> Use of Cookies and Similar Technology in Third-Party Advertising. Advertisers, advertising technology companies, and service providers that perform advertising-related services for Hulu and our business partners may use cookies and similar technologies (including for example those described in Section 2 ("Information We Collect")) to collect information from or about you through the Hulu Services in order to tailor advertisements, measure advertising effectiveness, and enable other enhancements. This information may relate to your use of the Hulu Services, websites you visited, advertisements you viewed, and your other activities online. Advertising that is based on information collected from or about you across websites, applications and other platforms over time is known as interest-based or online behavioral advertising.

*Id*. (https://press.hulu.com/privacy-policy/).

> We may use information in these forms for any legitimate business purpose, including for research and analysis, administration of the Hulu Services, advertising (e.g., improving our targeting efforts), and promotional purposes.

*Id*. at 3 (https://press.hulu.com/privacy-policy/).

> **3. Use of Information We Collect**
> Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:
> - providing the Hulu Services;
> - contacting you, including for promotional purposes;
> - customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
> - identifying Content you share;
> - customizing recommendations;
> - conducting research;
> - compiling aggregate data for internal and external business purposes;
> - preventing potentially illegal or harmful activities, including fraud;
> - protecting your and our rights;
> - other uses in accordance with our Terms of Use; and
> - any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.

*Id*. at 2-3 (https://press.hulu.com/privacy-policy/).



https://www.youtube.com/watch?v=IraVELyEgz0&t=60s

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT



https://www.youtube.com/watch?v=IraVELyEgz0&t=60s

https://www.youtube.com/watch?v=IraVELyEgz0&t=60s

297.    Hulu then generates a content stream that can consist of a video program (i.e., second content item) with one or more advertisements and segments/zones (i.e., one or more first content items) associated with it.  Within the content playlist, Hulu can also insert advertisements into the content using the EXT-X-DATERANGE and X-RESTRICT keys.  In the example provided by the HTTP Live Streaming media formats, the customer will be required to watch a 15 second advertisement and will not be able to skip or jump through it, per the X-RESTRICT tag.

141

COMPLAINT FOR                                              CASE NO.
PATENT INFRINGEMENT

**2.  Overview**

A multimedia presentation is specified by a Uniform Resource Identifier (URI) [RFC3986] to a Playlist.

A Playlist is either a Media Playlist or a Multivariant Playlist. Both are UTF-8 text files containing URIs and descriptive tags.

A Media Playlist contains a list of Media Segments, which, when played sequentially, will play the multimedia presentation.

Here is an example of a Media Playlist:

Pantos                    Expires 21 February 2026              [Page 5]

Internet-Draft          HTTP Live Streaming 2nd Edition          August 2025

```
#EXTM3U
#EXT-X-TARGETDURATION:10

#EXTINF:9.009,
http://media.example.com/first.ts
#EXTINF:9.009,
http://media.example.com/second.ts
#EXTINF:3.003,
http://media.example.com/third.ts
```

Ex. 10 at 3 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

142

COMPLAINT FOR                                          CASE NO.
PATENT INFRINGEMENT

**D.6.  Example: Interstitial EXT-X-DATERANGE**

In this playlist an EXT-X-DATERANGE tag schedules a 15-second ad to play four seconds into a six-second primary asset.  The client will play the interstitial and then resume playback of the primary asset where it left off.  Seeking and scanning forward will be disabled during interstitial playback.  The EXT-X-DATERANGE tag includes a vendor-defined beacon attribute that can be processed by the client.

Pantos                    Expires 21 February 2026              [Page 109]

Internet-Draft          HTTP Live Streaming 2nd Edition          August 2025

```
#EXTM3U
#EXT-X-TARGETDURATION:6
#EXT-X-PROGRAM-DATE-TIME:2020-01-02T21:55:40.000Z
#EXTINF:6,
main1.0.ts
#EXT-X-ENDLIST
#EXT-X-DATERANGE:ID="ad1",CLASS="com.apple.hls.interstitial",
    START-DATE="2020-01-02T21:55:44.000Z",DURATION=15.0,
    X-ASSET-URI="http://example.com/ad1.m3u8",X-RESUME-OFFSET=0,
    X-RESTRICT="SKIP,JUMP",X-COM-EXAMPLE-BEACON=123
```

*Id*. at 59-60 (https://datatracker.ietf.org/doc/html/draft-pantos-hls-rfc8216bis-18).

298.   The content stream containing the advertisements is subsequently transferred to a user's laptop, cellphone, etc. and is streamed on their device.

299.   Hulu generates a first and second test content map to determine the optimal advertisements for users to watch.  Hulu then receives response information to the first test content map, based on a first group of test users.  Hulu also receives response information to the second test content map, based on a second group of test users.

143

COMPLAINT FOR                           CASE NO.
PATENT INFRINGEMENT

**3. Use of Information We Collect**

Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:

- providing the Hulu Services;
- contacting you, including for promotional purposes;
- customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
- identifying Content you share;
- customizing recommendations;
- conducting research;
- compiling aggregate data for internal and external business purposes;
- preventing potentially illegal or harmful activities, including fraud;
- protecting your and our rights;
- other uses in accordance with our Terms of Use; and
- any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.

Ex. 12 at 2-3 (https://press.hulu.com/privacy-policy/).

300.   The information between the first and second test content maps are compared based on at least one objective content mapping criteria, such as monetization based on the content portrayed, the total number of viewers, or customer ratings of the content.  Specifically, Hulu uses A/B testing to compare the two groups and determine its recommended content.

We may use information in these forms for any legitimate business purpose, including for research and analysis, administration of the Hulu Services, advertising (e.g., improving our targeting efforts), and promotional purposes.

*Id.* at 3 (https://press.hulu.com/privacy-policy/).

144

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT



Ex. 15 at 4-5 (https://web.archive.org/web/20151006161004/http://tech.hulu.com/blog/2011/09/19/recommendation-system/).

301.   Hulu provides some examples of metrics that it measures.

Ex. 26 at 4 (https://hulu.disneyadvertising.com/ad-products/video-commercial/).

302.   A content map is ultimately generated based on the system's comparison between the first and second test content maps. Moreover, the content map allows Hulu to tailor its advertisements to its targeted audiences.

145

COMPLAINT FOR                              CASE NO.
PATENT INFRINGEMENT

**3. Use of Information We Collect**

Use in General. We use the information we collect from or about you in order to help deliver a first-class user experience. Our use of this information may include the following:

- providing the Hulu Services;
- contacting you, including for promotional purposes;
- customizing the Content and advertising you view and evaluating how well the Content and advertising perform;
- identifying Content you share;
- customizing recommendations;
- conducting research;
- compiling aggregate data for internal and external business purposes;
- preventing potentially illegal or harmful activities, including fraud;
- protecting your and our rights;
- other uses in accordance with our Terms of Use; and
- any other purpose that is disclosed to you at the time we collect the information or that is related to a request made by you.

Ex. 12 at 2-3 (https://press.hulu.com/privacy-policy/).

303.   Thus, the Accused Systems and Services satisfy all elements of at least Claim 1 of the '003 Patent.

304.   Hulu's direct infringement of the '003 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

305.   Hulu's infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

306.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283 and 285 for Hulu's direct infringement of the '003 Patent.

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

## COUNT XVI
### (Indirect Infringement of the '003 Patent)

307.   Innovation Technologies repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

308.   As set forth above, Hulu has had knowledge of Innovation Technologies' patents and of its infringement of the '003 Patent since prior to the filing of this Complaint.

309.   As set forth above, the Accused Systems and Services directly infringe the '808 Patent.  Additionally, Hulu has actively, knowingly, and intentionally induced and continues to induce infringement of one or more claims of the '808 Patent pursuant to 35 U.S.C. § 271(b); and has contributorily infringed and continues to contributorily infringe one or more claims of the '003 Patent under 35 U.S.C. § 271(c).

310.   Hulu indirectly infringes the '003 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing, and/or requiring others, including customers, purchasers, shoppers, users, and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '808 Patent, where all the steps of the method claims are performed by either Hulu, its customers, purchasers, shoppers, users, and developers, or some combination thereof.  For example, Hulu requires customers to follow its digital rights management mechanisms and stream content according to the terms of applicable licenses and

147

COMPLAINT FOR                                      CASE NO.
PATENT INFRINGEMENT

contracts.  Hulu also requires content producers and developers, including advertisers and other third parties, to adhere to the guidelines set forth in applicable licenses and contracts.

> **3.6 The Video Player.** You may not modify, enhance, remove, interfere with, or otherwise alter in any way any portion of the Video Player, its underlying technology, any digital rights management mechanism, device, or other content protection or access control measure incorporated into the Video Player. This restriction includes, without limitation, disabling, reverse engineering, modifying, interfering with or otherwise circumventing the Video Player in any manner that enables users to view the Content without: (i) displaying visibly both the Video Player and all surrounding elements (including the graphical user interface, any advertising, copyright notices, and trademarks) of the Access Point where the Video Player is located; and (ii) having full access to all functionality of the Video Player, including, without limitation, all video quality and display functionality and all interactive, elective, or click-through advertising functionality.

Ex. 11 at 3 (https://www.hulu.com/terms-apr-13-2022).

> This guide is separated into multiple sections, each of which covers a specific element of the various delivery packages or the transfer process. It is meant to cover common use-cases and frequently asked questions; please contact your Content Partner Manager or the content operations team if issues arise that are not addressed here. Please note that this guide supplements your content license agreement with Hulu.

Ex. 17 at 8 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

311.    Thus, Hulu knew or was willfully blind to the fact that it was inducing others, including customers, purchasers, shoppers, users, and developers, to infringe by practicing, either themselves or in conjunction with Hulu, one or more method claims of the '003 Patent, including at least Claim 1.

312.    Hulu knowingly and actively aided and abetted the direct infringement of the '003 Patent by instructing and encouraging its customers, purchasers, shoppers, users, and developers to use its Accused Systems and Services, as shown above. Such instructions and encouragement include, but are not limited to, advising third

148

COMPLAINT FOR                          CASE NO.
PATENT INFRINGEMENT

parties to use the Accused Systems and Services in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Systems and Services in an infringing manner.  Further examples of this instruction and encouragement include, for example, trainings by Hulu either in-person or by instructional videos and material, for its content developers and customers as to how to utilize the Hulu application, and how to stream and create content by utilizing Hulu's applications, technology, or website.

313.   Hulu updates and maintains help and customer service sections on its website which cover in-depth aspects of operating the Accused Systems and Services in an infringing manner and instruct consumers and content developers on how to configure and use the Accused Systems and Services in an infringing manner.  *See*, *e.g.*, Ex. 24 (https://help.hulu.com/article/hulu-ads-on-hulu); Ex. 17 (https://assets.hulu.com/portaldocuments/ContentPartnerGuidebook_v5.0.pdf).

314.   Hulu has knowingly and actively contributed to the direct infringement of the '003 Patent by its manufacture, use, offer to sell, sale and importation of the Accused Systems and Services together with its manufacturers, customers, purchasers, shoppers, users, developers, and/or vendors to meet the elements of the '003 Patent, as described above and incorporated by reference here.  Furthermore, Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers also directly infringe these claims jointly with Hulu, to the extent

149

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.

specific components are provided by those third parties.  To the extent Hulu's customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers direct and control the methods in the claims, Hulu obtains benefits from the control of the system as a whole.  Hulu requires its customers, purchasers, shoppers, users, developers, vendors, and/or manufacturers to put the methods described in the claims into service to obtain the benefit of Hulu's services.

315.   Hulu's indirect infringement of the '003 Patent has injured and continues to injure Innovation Technologies in an amount to be proven at trial, but not less than a reasonable royalty.

316.   Hulu's indirect infringement has caused and is continuing to cause damage and irreparable injury to Innovation Technologies, and Innovation Technologies will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

317.   Innovation Technologies is entitled to injunctive relief, damages, and any other relief in accordance with U.S.C. §§ 283 and 285 for Hulu's indirect infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Innovation Technologies prays for judgement and relief as follows:

COMPLAINT FOR                                    CASE NO.
PATENT INFRINGEMENT

A.      an entry of judgment holding that Hulu has infringed and is infringing, is inducing infringement of, and is contributing to infringement of each of the Asserted Patents;

B.      an entry of judgment holding that Hulu's infringement of each of the Asserted Patents has been willful and deliberate;

C.      a preliminary and permanent injunction against Hulu and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing, inducing infringement, and contributing to infringement of the Asserted Patents and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

D.      an award to Innovation Technologies of such damages as it shall prove at trial against Hulu that is adequate to fully compensate Innovation Technologies for Hulu's infringement of each of the Asserted Patents that will account for infringement up to trial based on the relevant information and financial data produced, where said damages will be no less than a reasonable royalty;

E.      a finding that this case is exceptional and an award to pay Innovation Technologies for its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

F.      an award of post-judgment interest, and costs under 35 U.S.C. § 284;

COMPLAINT FOR
PATENT INFRINGEMENT                               CASE NO.

G.      an accounting of all infringing sales and revenues from the first date of infringement; and

H.      such other and further relief, including equitable relief, as this Court deems just and proper.

Respectfully submitted,

Dated: November 14, 2025            By: */s/ James Hannah*
                                        James Hannah (S.B.N. 237978)
                                        Christina M. Finn (S.B.N. 247838)
                                        Paul J. Andre (S.B.N. 196585)
                                        HERBERT SMITH FREEHILLS
                                        KRAMER (US) LLP
                                        333 Twin Dolphin Drive, Suite 700
                                        Redwood Shores, CA 94065
                                        james.hannah@hsfkramer.com
                                        christina.finn@hsfkramer.com
                                        paul.andre@hsfkramer.com

                                        *Attorneys for Plaintiff*
                                        Innovation Technologies Partners LP

152

COMPLAINT FOR                               CASE NO.
PATENT INFRINGEMENT

## JURY DEMAND

Innovation Technologies Partners LP demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: November 14, 2025

By: */s/ James Hannah*
James Hannah (S.B.N. 237978)
Christina M. Finn (S.B.N. 247838)
Paul J. Andre (S.B.N. 196585)
HERBERT SMITH FREEHILLS KRAMER (US) LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
james.hannah@hsfkramer.com
christina.finn@hsfkramer.com
paul.andre@hsfkramer.com

*Attorneys for Plaintiff*
Innovation Technologies Partners LP

153

COMPLAINT FOR
PATENT INFRINGEMENT

CASE NO.